El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
En el caso de epígrafe nos corresponde establecer un delicado balance entre dos derechos constitucionales im-portantes: la libertad de expresión, en una situación en que la expresión impugnada es de naturaleza comercial, y el derecho a la intimidad, en su vertiente del derecho a la propia imagen. Por entender que, en las circunstancias particulares de este caso, el derecho a la intimidad consa-grado en la Constitución del Estado Libre Asociado de Puerto Rico y el derecho patrimonial a la propia imagen del Sr. Roberto Vigoreaux prevalecen sobre los intereses comerciales de Quizno’s Sub, Inc., revocamos el dictamen recurrido.
I
Los hechos de este caso no están en controversia. Como parte de una campaña publicitaria de mercadeo, la cadena de restaurantes de comida rápida Quizno’s Sub, Inc. (Quizno’s) publicó un anuncio en la prensa escrita del país en el cual aparecían unas fotografías del Sr. Carlos Pes-quera Morales y del Sr. Roberto Vigoreaux Lorenzana (se-ñor Vigoreaux Lorenzana o peticionario). Véase Apéndice I. Ambos fueron candidatos que perdieron en las primarias celebradas el 9 de noviembre de 2003 de sus respectivos partidos, apenas cinco días antes de la publicación de la mencionada publicación comercial.(1)
El referido anuncio promocionaba un emparedado de pollo que vende Quizno’s con la frase “Para los que se que-daron con las ganas” sobrepuesta entre las dos fotografías. Debajo de éstas se encontraba una imagen del sándwich y *259 la frase “Vuelve el delicioso Chicken Carbonara”.(2) Surge del expediente que Aprendo Strada, Inc., representante de Quizno’s en Puerto Rico, no solicitó autorización ni le pagó dinero alguno al señor Vigoreaux Lorenzana para utilizar su imagen en el mencionado anuncio. Tampoco lo hizo J. Walter Thompson, agencia de publicidad a cargo de las cuentas publicitarias de Quizno’s en Puerto Rico.(3)
En virtud de lo anterior, el señor Vigoreaux Lorenzana, su esposa Mary Ann Cortés Camacho, la Sociedad Legal de Gananciales compuesta por ambos y Vigomar, Inc. presen-taron una demanda de daños y peijuicios contra Quizno’s, Aprendo Strada, Inc., J. Walter Thompson y otros (Quizno’s o recurridos) ante el Tribunal de Primera Instancia. En dicha demanda argüyeron que la reproduc-ción de la imagen del señor Vigoreaux Lorenzana por parte de los codemandados se hizo sin su autorización expresa o tácita y sin que éste hubiese recibido compensación alguna por su uso. Por lo tanto, adujeron que la publicación del anuncio violó el derecho a la propia imagen y el derecho de publicidad del señor Vigoreaux Lorenzana. En vista de ello, solicitaron el pago de $500,000 como resarcimiento por los daños morales sufridos a base de la alegada expo-sición del señor Vigoreaux Lorenzana a la vergüenza y hu-millación, y por los daños económicos que se alega sufrió como consecuencia de la apropiación de su imagen comer-cial sin obtener el consentimiento correspondiente.
Luego de varios incidentes procesales, el foro de instan-cia dictó sentencia sumaria a favor de Quizno’s y los demás codemandados. Específicamente, el tribunal sentenciador determinó que el señor Vigoreaux Lorenzana era una fi- *260 gura pública por su participación en la palestra política en el momento de la publicación del anuncio y que, por lo tanto, era inmeritorio su reclamo de derecho a su propia imagen, ya que la publicación de la fotografía se encuentra en la llamada esfera de la historia contemporánea. Ade-más, concluyó que el señor Vigoreaux Lorenzana no podía invocar su derecho a la intimidad ni reclamar daños por haber sido objeto de humillación y burla, dado que el refe-rido anuncio constituyó una parodia o sátira política prote-gida por el derecho a la libertad de expresión que cobija a los codemandados.
Inconforme, el señor Vigoreaux Lorenzana, su esposa y Vigomar, Inc. acudieron ante el Tribunal de Apelaciones, el cual confirmó la sentencia apelada. En síntesis, dicho foro concluyó que en el balance de intereses, el derecho de inti-midad del señor Vigoreaux Lorenzana cede ante el derecho a la libertad de expresión comercial de Quizno’s y los de-más codemandados. Determinó, al igual que el Tribunal de Primera Instancia, que el anuncio en referencia constituye una sátira política cuya divulgación está protegida por el derecho constitucional a la libertad de expresión, a pesar de su claro propósito comercial o lucrativo. Además, adujo que como la fotografía publicada no revelaba aspectos ínti-mos y privados del señor Vigoreaux Lorenzana, a éste no le amparaba expectativa de intimidad alguna.
Por no estar de acuerdo con dicho dictamen, el señor Vigoreaux Lorenzana, su esposa y Vigomar, Inc. acuden ante este Tribunal. En esencia, sostienen que el foro ape-lativo incidió al no reconocer al señor Vigoreaux Lorenzana su derecho a la propia imagen, el derecho a la intimidad y el derecho a la publicidad, aun cuando Quizno’s se apropió de su imagen en un anuncio para vender un sándwich con el único objetivo de lucrarse económicamente, obviando la doctrina de enriquecimiento injusto. Específicamente, el señor Vigoreaux Lorenzana invoca la causal de daños reconocida en Colón v. Romero Barceló, 112 D.P.R. 573 (1982), *261 por violación al derecho a la intimidad en su vertiente del derecho, a la propia imagen.
Examinado el recurso, expedimos el auto. Con el bene-ficio de la comparecencia de todas las partes, procedemos a resolver.
II
Ninguna ley en nuestro ordenamiento jurídico atiende expresamente la controversia en el caso de autos, a saber, si se infringió el derecho de intimidad y publicidad del se-ñor Vigoreaux Lorenzana al incluir en un anuncio comer-cial publicado en un periódico de circulación general una foto suya sin su consentimiento, haciendo alusión a su de-rrota reciente en la contienda primarista. Ante la ausencia de legislación específica, las normas aplicables a este caso son aquellas derivadas del derecho general de responsabi-lidad extracontractual que surge del Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, lo que —a su vez— se debe enmarcar en los parámetros constitucionales invocados por las partes.
 A. Sabido es que la Carta de Derechos de la Cons-titución del Estado Libre Asociado de Puerto Rico protege expresamente el derecho fundamental a la intimidad y la dignidad de las personas. Art. II, Secs. 1 y 8, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, págs. 257 y 301.(4) Hemos ex-presado que éste es un derecho de la personalidad, el cual goza de la más alta protección bajo nuestra Constitución y *262 faculta a su titular a impedir o limitar la intervención de terceros —sean particulares o poderes públicos— contra la voluntad del sujeto. López Tristani v. Maldonado, 168 D.P.R. 838 (2006); Castro v. Tiendas Pitusa, Inc., 159 D.P.R. 650 (2003).
Dada la primacía y la envergadura de este derecho fundamental, hemos reconocido que la protección de lo privado opera por su propia fuerza y puede hacerse valer entre personas privadas, eximiéndolas así del requisito de acción estatal necesario para activar los derechos constitucionales de los ciudadanos. López Tristani v. Maldonado, supra; López v. E.L.A., 165 D.P.R. 280 (2005); Castro v. Tiendas Pitusa, supra, pág. 658; Vega et al. v. Telefónica, 156 D.P.R. 584, 600-601 (2002); Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 64 (1986); Colón v. Romero Barceló, supra, pág. 575. Tal protección es necesaria no tan sólo para que se pueda lograr una adecuada paz social o colectiva, sino para alcanzar una calidad mínima de la vida humana, al mantener un reducto de ésta fuera del alcance de terceros. López Tristani v. Maldonado, supra; Arroyo v. Rattan Specialties, Inc., supra, pág. 62. Es por ello que el derecho a la intimidad se puede hacer valer mediante una demanda por daños al amparo del Art. 1802 del Código Civil de Puerto Rico, supra, de forma tal que se pueda resarcir al agraviado por los perjuicios causados al violar el deber de no intervenir con la vida privada de los demás. Véanse: Castro v. Tiendas Pitusa, supra, pág. 659; Soc. de Gananciales v. Royal Bank de P.R., supra, págs. 201-202, citando a Colón v. Romero Barceló, supra.
A la luz de los hechos particulares de este caso, reiteramos que el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por el sistema del derecho civil. Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979). Por lo tanto, y de acuerdo con la normativa constitucional examinada, es menester señalar que la doctrina civilista reconoce el derecho a la propia imagen como un *263 derecho de la personalidad, protegido por principios cons-titutivos del ordenamiento jurídico. En primer lugar, se considera como imagen la proyección o representación de la figura humana mediante cualquier procedimiento o téc-nica de reproducción. A su vez, la imagen propia constituye un atributo fundamental con el cual se individualiza so-cialmente a la persona; es decir, es parte integral de la identidad del sujeto representado. López Tristani v. Maldonado, supra.
A tales efectos, el tratadista Eduardo Vázquez Bote ex-plica que “[s]obre esa imagen se reconoce un derecho, inhe-rente a la personalidad, que sólo puede actuar, normal-mente, el sujeto de la imagen misma”. E. Vázquez Bote, Los denominados derechos de la personalidad, VI (Núm. 18) Boletín Mexicano de Derecho Comparado 425 (septiem-bre-diciembre 1973). En vista de ello, hemos expresado que la propia imagen es digna de tutela por su estrecha rela-ción con la intimidad de la persona como con su honor. López Tristani v. Maldonado, supra; J. Santos Briz, La Responsabilidad Civil, Madrid, Ed. Montecorvo, 1993, Vol. I, págs. 199-201; C. Fernández Sessarego, Derecho a la Identidad Personal, Buenos Aires, Ed. Astrea, 1992, Sec. 17, págs. 138-142.
A pesar de que ninguna ley especial ni el Código Civil de Puerto Rico contempla expresamente el derecho a la propia imagen, este Tribunal ha reconocido el mencionado derecho subjetivo para configurar una causa de acción en daños por violación al derecho a la intimidad, el cual, según indicamos, surge expresamente de la Constitución del Estado Libre Asociado de Puerto Rico. Art. II, Secs. 1 y 8, Const. E.L.A., supra. En esencia, hemos establecido que toda persona tiene derecho a controlar dónde, cuándo y cómo se le toma una fotografía o se reproduce de cualquier forma su imagen. Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996); Colón v. Romero Barceló, supra.
Al reconocer el derecho a la propia imagen como una *264 vertiente del derecho a la intimidad, en Bonilla Medina v. P.N.P., supra, pág. 301, y en Colón v. Romero Barceló, supra, pág. 578, expresamos que
[e]n virtud de este derecho toda persona puede oponerse a que se reproduzca su efigie o se obtengan pruebas fotográficas de la misma, por personas a quienes no hayan concedido au-torización expresa o tácita. ... La autorización para hacer una fotografía no incluye la autorización para publicarla, ya que la publicación afecta la personalidad del interesado más intensa-mente que el simple hecho de retratarlo. La autorización para ser publicada puede incluir alguna limitación cuya amplitud se determinará según la interpretación del caso concreto. Ci-tando a J. Santos Briz, El Derecho de Daños, Madrid, Ed. Rev. Der. Privado, 1963, págs. 178-179.
A su vez, en tales pronunciamientos reconocimos la existencia de varias defensas oponibles a esta causa de acción, al señalar que se considera admisible, sin perjuicio de otras causas de justificación, la publicación o la toma de fotografías en la esfera llamada de historia contemporánea (aus dem Bereich der Zeitgeschichte) no referida a la vida privada, o cuando reproduzcan reuniones, manifestaciones u otros actos públicos semejantes, o sucesos o localidades públicos en los que la persona fotografiada sea una figura accesoria. Bonilla Medina v. P.N.P., supra, pág. 302; Colón v. Romero Barceló, supra, pág. 578, citando a Santos Briz, op. cit.
Además, en ambos casos concluimos que se admite la publicación de fotografías hechas sin petición del interesado cuando así lo justifique un interés público o un serio interés artístico, o cuando el derecho constitucional a la libertad de expresión del demandado prevalezca sobre los intereses del sujeto fotografiado. Bonilla Medina v. P.N.P., supra, pág. 302; Colón v. Romero Barceló, supra, pág. 578. Véase, además, L. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, Madrid, Tecnos, 1992, Vol. 1, pág. 377.
De acuerdo con lo anterior, señalamos que toda lesión de la personalidad es antijurídica salvo que concurra una *265 causa de justificación o el consentimiento del afectado, o que el acto se considere socialmente adecuado por ser con-forme a derecho en atención a la ordenación ético-social de la vida en común. Colón v. Romero Barceló, supra, pág. 580, citando a J. Santos Briz, op. cit., págs. 165-166. No obstante, también aclaramos que aun en estos casos no debe tolerarse tomar o publicar una fotografía cuando a ello se oponga un interés legítimo, como lo sería el derecho a la intimidad del fotografiado. Igualmente, debe conside-rarse inadmisible la publicación de una fotografía cuando su toma haya violado intereses dignos de una protección predominante.
Ahora bien, el derecho a la propia imagen en otras ju-risdicciones no se limita a ser considerado como una ver-tiente derivada del derecho a la intimidad. A diferencia de la normativa mencionada, Castán propone que la tutela de la imagen se manifiesta como una forma o derivación de la protección del honor. J. Castán Tobeñas, Los derechos de la personalidad, XXIV (Núms.l — 2) Rev. Gen. Leg. Jur. 56 (ju-lio-agosto 1952). Por lo tanto, el mencionado derecho se violenta sólo cuando su publicidad o difusión cause una injuria u ofensa a la personalidad, sin que necesariamente se interfiera con la intimidad del sujeto. Según Castán, esta normativa doctrinal ha sido adoptada en el ordena-miento de varios países civilistas.(5)
Por otro lado, la tendencia actual predominante —tanto en el derecho civil como en el dérecho común anglosajón— es el reconocimiento de la protección de la imagen como un derecho independiente. (6) Este derecho otorga a su titular *266 la facultad respecto de todos de excluir la reproducción y publicación de la propia imagen por un tercero que carece del consentimiento para ello, al dar pie a la responsabili-dad extracontractual del que la publica y la reproduce. De acuerdo con esta interpretación, no se trata de una mera protección frente al autor de la fotografía, sino de un límite al derecho de libertad de expresión de la ciudadanía. Véase X. O’Callaghan, Libertad de expresión y sus límites: honor, intimidad e imagen, Madrid, Ed. Rev. Der. Priv., 1991, págs. 117-118. A pesar de la naturaleza autónoma del de-recho a la propia imagen, en esta corriente doctrinal, el Tribunal Constitucional español ha expresado que este es “un derecho de la personalidad, derivado de la dignidad humana y dirigido a la protección del patrimonio moral de las personas”. STC 14/2003, de 28 de enero de 2003. Véanse, además: STC 81/2001, de 26 de marzo de 2001; STC 99/1994, de 11 de abril de 1994.
De otro modo, en la doctrina civilista se ha planteado la existencia de un derecho patrimonial a la imagen, relati-vamente ajeno al derecho de la personalidad. Esta es la normativa que ha adoptado la jurisprudencia federal y el derecho común anglosajón de gran parte de los estados, bajo la figura del derecho a la publicidad (“right of publicity”).(7) Al amparo de esta protección patrimonial, que se caracteriza como un derecho de propiedad intelec-tual, el sujeto tiene derecho a participar económicamente en la comercialización de su propia imagen, su nombre o su parecido. S.L. Dogan y M.A. Lemley, What the Right of Publicity Can Learn from Trademark Law, 58 (Núm. 4) Stan. L. Rev. 1161 (2006); F. Igartúa Arregui, La apropiación co-mercial de la imagen y del nombre ajenos, Madrid, Ed. Tec-nos, 1991, págs. 76-98; O’Callaghan, op. cit.
Aunque se puede decir que el valor económico de la ima- *267 gen de una persona es de naturaleza intangible, ésta puede tener un valor comercial o publicitario que responda a las características y esfuerzos particulares de la persona en un ámbito determinado. En el mundo contemporáneo, la ex-plotación de las imágenes de artistas y celebridades es in-dudablemente un gran negocio, que se utiliza constante-mente en los mercados lucrativos de publicidad. A su vez, la utilización no autorizada de la imagen de una persona para propósitos comerciales, sin su remuneración o consen-timiento, generalmente da lugar a una causa de acción en daños por violación al derecho a la publicidad de la persona afectada. R. Schechter y J. Thomas, Intellectual Property: The Law of Copyrights, Patents and Trademarks, St. Paul, Thomson & West, 2003, págs. 263-269.(8)
De hecho, cabe señalar que el derecho patrimonial a la propia imagen —o el derecho a la publicidad— también se ha enraizado en el derecho a la intimidad. R.A. Epstein, Torts, Nueva York, Aspen Publishers, 1999, Sec. 19.3 (1999). En su célebre e influyente artículo sobre la intimi-dad, el decano Prosser demostró que la “privacidad” es un término sombrilla que incluye cuatro diversas causas de acción que dan lugar a la imposición de responsabilidad extracontractual. W.L. Prosser, Privacy, 48 (Núm. 3) Cal. L. Rev. 383 (1960). Éstas incluyen, a saber: la protección del individuo contra la intromisión indebida en su vida pri-vada; la prohibición de revelar o divulgar aspectos priva- *268 dos e íntimos de la persona, ocasionando vergüenza y hu-millación como consecuencia de su publicación, y la responsabilidad por distorsionar y representar bajo una falsa luz las características individuales de la persona, sa-cando públicamente de contexto sus posturas o pronuncia-mientos sin que medie justificación alguna. Por último, y en lo pertinente, el derecho a la intimidad incluye una causa de acción contra todo aquel que se apropia indebida-mente del nombre, de la imagen o del parecido de una persona para propósitos lucrativos o comerdales. (9)
B. Por otra parte, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico consagra la libertad de expresión como uno de los valores de la más alta jerarquía constitucional, al disponer que “[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa o el derecho del pueblo a reunirse en asamblea pacífica y a pedir al gobierno la reparación de agravios”. Art. II, Sec. 4, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 269. Este Tribunal ha expresado reiteradamente que la libertad de expresión es una “raíz indiscutible del sistema democrático de gobierno”. Bonilla Medina v. P.N.P., supra, pág. 299. Véase, también, Mari Bras v. Casañas, 96 D.P.R. 15, 20-21 (1968). A su vez, hemos establecido en casos de daños y perjuicios derivados del derecho a la intimidad que la libertad de expresión también puede ser una defensa, pues el ejercicio legítimo de un derecho es una causa de exclusión de antijuridicidad que elimina la culpa. *269 Véanse: Bonilla Medina v. P.N.P., supra; Colón v. Romero Barceló, supra. (10)
En armonía con esta normativa, hemos enfatizado que la expresión política debe recibir el más alto grado de pro-tección constitucional en nuestra sociedad pluralista. El li-bre intercambio de ideas, opiniones e información sobre los procesos gubernamentales y políticos permite que la toma de decisiones se realice de manera democrática. Bonilla Medina v. P.N.P., supra. Por lo tanto, es evidente la pre-eminencia de la expresión política dentro de la protección constitucional a la libertad de expresión.
Ahora bien, es preciso distinguir entre la expresión política y la expresión comercial en nuestro ordenamiento constitucional. Hemos expresado anteriormente que el valor superior otorgado a la libertad de expresión “no supone una irrestricción absoluta, de forma que no pueda subordinarse a otros intereses cuando la necesidad y conveniencia pública los requieran”. Muñiz v. Admor. De- . porte Hípico, 156 D.P.R. 18, 24 (2002). Véanse: Bonilla Medina v. P.N.P., supra, pág. 300; Mari Bras v. Casañas, supra, pág. 21. Sin embargo, también hemos señalado que las limitaciones a la libertad de expresión serán interpretadas restrictivamente, de manera que no abarquen más de lo imprescindible. Muñiz v. Admor, Deporte Hípico, supra; Velázquez Pagán v. A.M.A., 131 D.P.R. 568, 577 (1992).
Aunque no cabe duda de que la expresión para fines lucrativos y comerciales se encuentra bajo el ámbito de protección de las Constituciones de Puerto Rico y de Estados Unidos, ésta puede ser regulada sustancialmente por el Estado con mayor facilidad. Véase In re Gervitz Carbonell, 162 D.P.R. 665 (2004). El propósito fundamental de este tipo de expresión es promover una transacción comer- *270 cial, no necesariamente el libre intercambio de ideas. Por lo tanto, la expresión comercial está sujeta a una protec-ción constitucional menos rigurosa que otras formas de ex-presión, como lo es la expresión política.(11)
Por último, reiteramos que la libertad de expresión se puede aducir en pleitos entre particulares. Colón v. Romero Barceló, supra, pág. 582; E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975); Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974). En los referidos casos, sopesamos los intereses involucrados —a saber, la libertad de expresión y el derecho a la intimidad— para determinar cuál derecho prevalece a base de las circunstancias particulares de la controversia.
En esta ocasión, precisamente, nos corresponde estable-cer un balance entre los intereses de la libre expresión de Quizno’s y los intereses del señor Vigoreaux Lorenzana so-bre su intimidad e imagen propia.
III
A. El señor Vigoreaux Lorenzana alega que sufrió una violación del derecho a la propia imagen, del derecho a la intimidad y de su derecho de publicidad por la publicación de su fotografía en un anuncio comercial sin su consentimiento. Antes de dilucidar la tensión imperante entre los intereses constitucionales invocados por las par-tes, debemos evaluar la aplicación de alguna de las causas de justificación y las defensas oponibles al derecho a la propia imagen que reconocen nuestra jurisprudencia y la doctrina civilista.
*271 Tanto los codemandados como los foros apelativos aducen que la fotografía publicada se encuentra en la llamada esfera de historia contemporánea, conforme a nuestros pronunciamientos en Bonilla Medina v. P.N.P., supra, y Colón v. Romero Barceló, supra. En dichos casos, expresamos que la publicación o la toma de fotografías como medio para difundir la historia contemporánea, cuando no se trate de la vida privada del objeto del individuo, no conllevará responsabilidad extracontractual. En tales supuestos, se entendería que el derecho a la propia imagen cede ante el interés público apremiante de acceso a la información y la divulgación de ideas. A su vez, también expresamos que la doctrina civilista permite tomar o publicar la fotografía de una persona, aun sin su consentimiento, cuando ésta sea una figura accesoria en alguna reunión, manifestación u otro acto o suceso público.(12)
En el caso de autos, surge del expediente que la fotogra-fía del señor Vigoreaux Lorenzana publicada en el anuncio de Quizno’s no es, ni se obtuvo, de forma escandalosa. A diferencia de Colón v. Romero Barceló, supra, no se trata de una foto grotesca utilizada para “capitalizar” a costa del dolor ajeno. La mencionada fotografía había sido publicada anteriormente en un periódico de circulación general, y no revelaba aspectos privados o íntimos del señor Vigoreaux Lorenzana. Sin embargo, a pesar de que en el caso de epí-grafe la fotografía se tomó en un evento público, la efigie del señor Vigoreaux Lorenzana no era una figura accesoria ni en el anuncio ni en la propia imagen fotográfica publi-cada por Quizno’s. Todo lo contrario, las fotografías del se-ñor Vigoreaux Lorenzana y del señor Pesquera Morales ocupan una posición céntrica y prominente en el anuncio *272 de referencia.(13) De hecho, cada fotografía ocupa casi la mitad del mencionado anuncio, que a su vez constituyó media página del periódico El Nuevo Día.
Por otro lado, no se deduce del expediente ni ha sido alegado por las partes que la fotografía ostente un serio interés artístico que justifique su publicación sin el consentimiento del peticionario. Mucho menos se trata de una fotografía que se publica por razón de interés público. Conforme a nuestros pronunciamientos en Colón v. Romero Barceló, supra, pág. 581, la causa de exclusión de antijuridicidad referente al interés público “prevalece cuando la intromisión a la intimidad es necesaria e inevitable y constituye el medio más adecuado para obtener un fin lícito”. (Énfasis suprimido.) Claramente, la expresión comercial de Quizno’s en controversia no fue el medio más adecuado para mercadear sus productos ni constituyó una intromisión inevitable y necesaria contra el derecho a la propia imagen del señor Vigoreaux Lorenzana. (14)
Ahora bien, en vista de que la fotografía no revelaba aspectos de la vida privada del peticionario ni se tomó de forma escandalosa, el foro apelativo concluyó que el dere-cho a la intimidad del señor Vigoreaux Lorenzana no fue infringido. Además, adujo que por ser figura pública, “[éste] no podía tener expectativa de privacidad alguna”. Para llegar a esta conclusión, el tribunal apelativo limitó el *273 alcance del derecho a la intimidad a supuestos donde hay una intromisión indebida con los aspectos de la vida pri-vada del demandante. Ciertamente, la publicación de la fotografía no constituyó una interferencia con la esfera ín-tima y privada de la vida del señor Vigoreaux Lorenzana.
No obstante, y de acuerdo con la normativa anteriormente expuesta, el derecho a la intimidad también incluye una causa de acción contra todo aquel que se .apropia indebidamente del nombre, imagen, , o parecido de una persona para propósitos comerciales. Al partir de la premisa que los objetivos de Quizno’s en la publicación del anuncio bajo nuestro escrutinio eran evidentemente comerciales, no cabe duda de que la diseminación de la fotografía configuró la utilización indebida de la imagen del peticionario. Por lo tanto, el tribunal apelativo erró al determinar que al señor Vigoreaux Lorenzana no le amparaba el derecho a la intimidad, en la vertiente del derecho a la propia imagen.
Aclarado lo anterior, debemos considerar la validez de la conclusión de los foros recurridos, en el sentido de que el anuncio de referencia constituye una hipérbole retórica, una parodia y una sátira política cuya divulgación está protegida por el derecho constitucional a la libertad de ex-presión, a pesar de su claro propósito comercial o lucrativo.
B. En primer lugar, afirmamos nuevamente que la libertad de expresión es una defensa oponible a los casos de derecho a la propia imagen y a los casos de libelo, pues su ejercicio legítimo consiste en una causa de exclusión de antijuridicidad que elimina la culpa. Sin embargo, hemos expresado que no debe confundirse el derecho a la propia imagen con la difamación. Algunos de los rasgos que distinguen la acción en daños derivada de la violación al derecho a la propia imagen del libelo son: (i) que no se trata de una publicación en ejercicio de la libertad de prensa, pues es una persona o entidad particular quien promueve la publicación; (ii) que la acción en daños por *274 violación al derecho a la propia imagen no requiere que la reproducción tenga impacto ofensivo alguno, y (iii) que la verdad no es defensa. Pérez v. El Vocero de P.R., 149 D.P.R. 427, 443 (1999).(15)
Por lo tanto, es menester señalar que las causas de jus-tificación invocadas por el foro apelativo y por los recurri-dos —a saber, la sátira, la parodia y la hipérbole retórica— sólo han sido reconocidas por este Tribunal en casos de libelo, y no en casos de violación al derecho a la propia imagen ni en casos de expresión comercial. Véase Garib Bazain v. Clavell, 135 D.P.R. 475 (1994).(16) En vista de ello, nos corresponde evaluar estas figuras a la luz de los hechos particulares del caso de autos.
De acuerdo con la casuística del Tribunal Supremo federal, y a modo ilustrativo, definimos la figura de hipérbole retórica como una expresión que se alega difamatoria y que no se acciona si se utiliza en un sentido figurativo, flexible y no necesariamente por su significado literal. Garib Bazain v. Clavell, supra, pág. 486. Es decir, la hipérbole retórica es una defensa oponible a las imputaciones de false-dad o mendacidad de una expresión alegadamente libelosa. Véase, a modo ilustrativo, Greenbelt Cooperative Publishing Assn., Inc. v. Bresler, 398 U.S. 6 (1970).
Claramente, los foros recurridos erraron al aplicar esta doctrina al caso de autos. El presente caso trata *275 sobre el derecho a la propia imagen frente a una expresión comercial y no sobre una causa de acción de difamación o libelo que precise la adjudicación de la falsedad del anun-cio publicado. A diferencia de la difamación, la causa de acción por violar el derecho a la propia imagen no está condicionada a la naturaleza falsa de la expresión imputada. Como expresamos en Pérez v. El Vocero de P.R., supra, la verdad no es defensa en acciones de responsabi-lidad civil de esta índole. Por lo tanto, es impertinente la conclusión del tribunal apelativo en cuanto a que la expre-sión comercial de Quizno’s no puede ser razonablemente interpretada para evocar hechos reales.
De la misma manera, el foro apelativo confunde las doc-trinas relacionadas a la parodia y a la sátira política. En el contexto del libelo, hemos señalado que “[e]l humor, sea en forma de sátira, parodia, chistes, etc., rinde una función dual al entretener y servir de crítica social simultá-neamente. Como tal, amerita una protección especial en nuestra sociedad”. Garib Bazain v. Clavell, supra, pág. 488. Aunque surge del expediente que las fotografías del señor Vigoreaux Lorenzana y del señor Pesquera Morales se publicaron en un contexto humorístico, la función principal de la publicación del anuncio no era entretener ni servir de crítica social.(17) El objetivo del anuncio de Quizno’s era estrictamente comercial, pues sólo intentaba promover la venta de su nuevo emparedado. De hecho, el *276 propósito comercial de la publicación se deduce del propio anuncio, el cual ofrecía un descuento de dos dólares para la compra del sándwich a todo aquel que llevara el anuncio a una sucursal de Quizno’s. Como ya señalamos, la expresión comercial está sujeta a una protección constitucional me-nos rigurosa que otras formas de expresión, como lo eran las expresiones políticas que se encontraban en tensión con el derecho a la propia imagen en los casos Bonilla Medina v. P.N.P., supra, y Colón v. Romero Barceló, supra.(18)
Más aún, cabe destacar que los foros recurridos utiliza-ron indistintamente las figuras de la sátira y la parodia, confundiendo e ignorando las diferencias de la casuística en cuanto a estas defensás desarrolladas por la doctrina y la jurisprudencia en casos de libelo, libertad de expresión y derechos de autor. Primeramente, la vigésima segunda edi-ción del el Diccionario de la Real Academia Española (2001) define la parodia meramente como una “imitación burlesca”. Claramente, la fotografía del señor Vigoreaux Lorenzana no es una imitación burlesca de otro anuncio, expresión o imagen, por lo que el anuncio, según esta defi-nición, no constituye una parodia. Por otra parte, en . el contexto de propiedad intelectual, el Tribunal Supremo federal ha esbozado que una parodia es aquella expresión que utiliza algunos elementos de la composición original para crear una obra nueva que, por lo menos en parte, comente o se burle directamente de la obra original. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 580 (1994).(19) *277 De acuerdo con. esta definición, la fotografía publicada por Quizno’s tampoco es una parodia, pues no hay ninguna al-teración en la imagen del señor Vigoreaux Lorenzana y no se observa valor transformativo alguno en su publicación. El mero acto de insertar unas palabras burlescas sobre la fotografía no es suficiente para crear una obra nueva bajo la doctrina de parodia de propiedad intelectual.
Por otro lado, el referido diccionario define la sátira como una “[c] omposición poética u otro escrito cuyo objeto es censurar acremente o poner en ridículo a alguien o algo”. Real Academia Española, Diccionario de la Lengua Española, 22da ed., Madrid, Ed. Espasa Calpe, 2001, T. II, pág. 2031. Cónsono con ello, el Tribunal Supremo federal ha expresado que la sátira utiliza la obra original sin alte-ración o transformación significativa para criticar otro ele-mento social, no relacionado necesariamente con la obra original misma, por lo que se requiere mayor justificación para el mero acto de apropiación. Por lo tanto, la sátira tiene una protección constitucional de menor jerarquía que la parodia, especialmente cuando se utiliza para propósitos lucrativos y comerciales. Campbell v. Acuff-Rose Music, Inc., supra, pág. 581.
Es evidente que la fotografía publicada del señor Vigo-reaux Lorenzana es una exposición literal de su imagen que no tiene valor transformativo alguno que la convierta en una parodia constitucionalmente protegida para propó-sitos de la doctrina y la jurisprudencia mencionada.(20) Como máximo, se podría considerar que ésta es una sátira con una protección constitucional muy limitada, dado el propósito comercial y mercantilista de la publicación del *278 anuncio. El valor económico del anuncio publicado por Quizno’s, en el contexto del mercadeo de bienes comercia-les, se deriva principalmente de la fama y notoriedad del señor Vigoreaux Lorenzana y del señor Pesquera Morales. Al ser candidatos derrotados, tampoco se puede aducir que éstos derivaron algún beneficio electoral por la publicación del anuncio. Además, no existe un interés legítimo en que los recurridos obtengan gratis algún aspecto del peticiona-rio que tiene valor comercial en el mercado y que, de ordi-nario, tendrían que pagar y obtener su consentimiento para su utilización. H. Kalven, Jr., Privacy in Tort Law—Were Warren and Brandéis Wrong?, 31 (Núm. 2) Law & Contemp. Prob. 326, 331 (1966).
Por último, es menester aclarar que la condición de figura pública no priva por completo al individuo de su expectativa a la intimidad, como parece sugerir el tribunal apelativo. Este Tribunal ha señalado que catalogar a un demandante como “figura pública” significa “que para prevalecer en un pleito de difamación se le someterá a un criterio más riguroso de prueba, [y] que su derecho a la intimidad pesa menos que el derecho de otros a la libre expresión, a menos que demuestre la existencia en éstos de malicia real”. Garib Bazain v. Clavell, supra, pág. 483; Clavell v. El Vocero de P.R., 115 D.P.R. 685, 692-693 (1984). En ningún momento hemos expresado que la figura pública pierde su intimidad por completo, ni mucho menos que su personalidad es de dominio público para propósitos comerciales.(21)
*279 Además, en ocasiones anteriores hemos expresado que ante un reclamo de violación a este derecho constitucional, “[l]a cuestión central es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete”. Castro v. Tiendas Pitusa, supra, pág. 659, citando a E.L.A. v. P.R. Tel. Co., 114 D.P.R. 394, 402 (1983). Es decir, lo que constituye un ataque abusivo o una intromisión a la intimidad dependerá de las circunstancias particulares en que se manifiesta la acción estatal o personal, y la naturaleza del interés privado que se quiere proteger. En otras palabras, el criterio rector para determinar si existe o no la referida protección es si quien la reclama tiene una expectativa legítima a la intimidad bajo las circunstancias particulares y concretas del caso. Castro v. Tiendas Pitusa, supra, pág. 660.
En conformidad con ello, entendemos que el tribunal apelativo erró al señalar que al trasladarse del mundo del espectáculo a la esfera política, el señor Vigoreaux Loren-zana perdió todo control sobre su intimidad y su imagen comercial. Es cierto que las figuras políticas están sujetas a un escrutinio riguroso sobre sus funciones y capacidades, e incluso sobre su personalidad y carácter. Aunque la ex-pectativa de intimidad del señor Vigoreaux Lorenzana era limitada por su condición de legislador y figura política al momento de los hechos, todavía le amparaba su derecho a la propia imagen. (22) Por lo tanto, esta realidad no inmu- *280 niza a las entidades comerciales de responder civilmente por utilizar sin autorización la imagen e identidad de un sujeto para fines estrictamente lucrativos, sin que medie ninguna expresión artística o transformativa, o alguna de las causas de justificación anteriormente mencionadas.
Por todo lo anterior, concluimos que el uso no autorizado de la identidad de una persona para mercadear un producto o proponer una transacción comercial no es permisible y da lugar a una causa de acción por violación al derecho a la propia imagen, valor tutelado por el derecho a la intimidad. Dado que el señor Vigoreaux Lorenzana es una figura pública, es evidente que su conocida identidad se utilizó para mercadear el emparedado y promover un mayor volumen de ventas a costa de su propia imagen. Dicha imagen fue utilizada para propósitos de publicidad, sin que mediaran los elementos humorísticos y derivativos suficientes que la transformaran en una expresión protegida por el derecho a la libertad de expresión. Un comercio tiene el derecho a diseminar información sobre sus productos pero incurrirá en responsabilidad civil extracontractual si utiliza la imagen de una persona sin su consentimiento o sin que medie alguna de las mencionadas causas de justificación.(23)
En el caso ante nos, la expresión comercial cede ante el derecho a lo privado. Al no constituir una parodia o *281 expresión constituciqnalmente protegida de mayor jerar-quía que el derecho a la intimidad, concluimos que la pu-blicación no autorizada de la fotografía de referencia para propósitos comerciales configuró una violación al derecho a la propia imagen del peticionario. Nuestra jurisprudencia ha reconocido que el concepto de culpa del Art. 1802 del Código Civil, supra, es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona que produce un mal o daño. Colón v. Romero Barceló, supra, pág. 579; Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976). Es por ello que además de cons-tituir una infracción al derecho subjetivo de la personali-dad del señor Vigoreaux Lorenzana, concluimos que el acto en controversia también constituye una violación de natu-raleza patrimonial.
IV
Por los fundamentos que anteceden, resolvemos qiie el peticionario tiene derecho a participar económicamente en la comercialización de su propia imagen, su nombre o su parecido, conforme al valor de tasación de tal imagen en el mercado de publicidad al momento de los hechos, pues le ampara un derecho patrimonial a la propia imagen. A su vez, tiene derecho a la concesión de daños morales por ha-ber sufrido una violación del derecho a la intimidad, en la vertiente subjetiva de su derecho a la propia imagen. No obstante, dada la naturaleza novel de la controversia y la expectativa de intimidad limitada del señor Vigoreaux Lo-renzana por ser una figura política al momento de la pu-blicación del anuncio, resolvemos que en el caso particular ante nos los daños morales son accesorios y marginales, por lo cual no deben ser mayores a los daños económicos que en su momento determine el tribunal de instancia.
Por consiguiente, revocamos la sentencia emitida por el Tribunal de Apelaciones y, en consecuencia, devolvemos el *282 caso al Tribunal de Primera Instancia para que continúe con los trámites ulteriores conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez no intervino.

 El señor Vigoreaux Lorenzana era candidato a la alcaldía de San Juan por el Partido Popular Democrático, mientras que el señor Pesquera Morales era candidato a la gobernación de Puerto Rico por el Partido Nuevo Progresista.

 Dicho anuncio se publicó en una página completa del periódico El Nuevo Día. Ambas fotografías ocupaban más de dos terceras partes del anuncio. Además, en letras pequeñas insertadas en la esquina inferior izquierda, se anunciaba lo si-guiente: “Lleva este anuncio hoy a tu Quizno’s favorito y recibe $2 de descuento en el delicioso Chicken Carbonara.”

 Se deduce del expediente que tampoco se obtuvo el consentimiento del señor Pesquera Morales ni que se le remuneró por la publicación del anuncio.

 El derecho a la intimidad está expresamente consagrado en la See. 8 del Art. II de nuestra Constitución, el cual dispone que “[t]oda persona tiene derecho a [la] protección de [la] ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar”. Art. II, Sec. 8, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1999, pág. 301. Por su parte, la Sec. 1 del Art. II establece la inviolabilidad de la dignidad del ser humano como principio básico que inspira los demás derechos incluidos en la Carta de Derechos, Véanse: Vega et al. v. Telefónica, 156 D.P.R. 584, 601 (2002); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178 (1998).

 Véanse, a modo comparativo: Art. 10 del Código Civil de Italia; Art. 31 de la Ley de Propiedad Intelectual de Argentina.

 En España, el derecho a la propia imagen es de jerarquía constitucional. Art. 18.1, Const, española 1978. Además, existe una ley especial que tipifica como intro-misión ilegítima la utilización de la imagen de una persona para fines publicitarios, comerciales o de naturaleza análoga. Ley de 5 de mayo 1982. Véanse, además: F. Herrero-Tejedor, Honor, Intimidad, y Propia Imagen, 2da ed., Madrid, Ed. Colex, 1994, pág. 100; J. Royo Jara, La protección del derecho.a la propia imagen, Madrid, Ed. Colex, 1987; Arts. 22 y 23, Kunsturhebergesetz, Ley de Creación Artística Alemana (KUG).

 En algunos estados el derecho a la publicidad es de naturaleza estatutaria. Véanse: California Civil Code Sec. 3334.1; Virginia Code Sec. 8.01-40. En otros es-tados, la doctrina se ha desarrollado mediante jurisprudencia.

 A tales efectos, la doctrina sugiere que en estos casos existen daños económi-cos como consecuencia de una disminución de los ingresos que pudieron haberse obtenido por la participación consentida del individuo en ese mercado de publicidad; o por causa de un enriquecimiento injusto del que ha obtenido beneficios a costa de las características de la identidad de otra persona sin compensarle por ello. Para un análisis económico del derecho patrimonial a la propia imagen, véase E. Amat Llari, El derecho a la propia imagen y su valor publicitario, Madrid, La Ley, 1992, págs. 19-23. Véase, además, R. Posner, Economic Analysis of Law, 6ta ed., Nueva York, Aspen Publishers, 2003, págs. 42-43. Al hacer el cómputo del valor comercial de la imagen para resarcir los daños económicos, se pueden tomar en cuenta, como variables reductoras de la indemnización, los beneficios derivados por el sujeto a raíz de la publicación. Este sería el caso de un candidato político que se beneficia de la publi-cidad positiva, aunque sea para fines comerciales y lucrativos de un tercero. Véase, a modo ilustrativo, Paulsen v. Personality Posters, Inc., 299 N.Y.S. 2d 501 (1968).

 Esta causa de acción por violación al derecho a la publicidad fue reconocida como una causa de acción derivada del derecho a la intimidad en Zacchini v. Sci'ipps-Howard Broadcasting Co., 433 U.S. 562 (1977). En ese caso, el Tribunal Supremo federal hizo un balance entre los intereses económicos que emanan de la identidad de una celebridad y el interés público en la publicación no autorizada y no remune-rada de su imagen. El Tribunal Supremo federal determinó que tal apropiación de la imagen del demandante fue indebida y constituyó una violación a su derecho patrimonial a la propia imagen. No obstante, en ese caso queda claro la dicotomía entre la causa de acción por virtud del derecho a la intimidad, el cual protege contra las angustias mentales que resultan de publicidad no deseada, y el derecho a la publi-cidad, el cual protege intereses pecuniarios y no emocionales. Véase, a modo ilustrativo, Ventura v. Titan Sports, Inc., 65 F.3d 725, 730 (8vo Cir. 1995).

 Véase, además, R. Colón Cortés, Reconstruyendo la casa de cristal: la res-ponsabilidad civil extracontractual derivada de los daños ocasionados al derecho a la intimidad, 72 (Núm. 4) Rev. Jur. U.RR. 695 (2003).

 Véanse, a modo ilustrativo: Board, of Trustees, State Univ. of N.Y. v. Fox, 492, U.S. 469 (1989); Posadas de Puerto Rico Assoc. v. Tourism Co., 478 U.S. 328 (1986); Va. Pharmacy Bd. v. Va. Consumer Council, 425 U.S. 748 (1976); Capital Broadcasting Co. v. Mitchell, 333 F. Supp. 582. (D. D.C. 1971), 405 U.S. 1000 (1972). Además, el Tribunal Supremo federal ha sugerido que si se utiliza un mensaje social para la promoción de un producto o marca, el mensaje en su totalidad constituye una expresión comercial. Bolger v. Youngs Drug Products Corp., 463 U.S. 60 (1983).

 A raíz de ello, la causa de acción por el derecho a la propia imagen en Bonilla Medina v. P.N.P., 140 D.P.R. 294 (1996), no procedió, entre otras razones, porque el demandante era una figura accesoria en el anuncio político publicado por la campaña del gobernador Pedro Rosselló González, y la fotografía se tomó en el contexto de un evento público.

 Además, en Bonilla Medina v. P.N.P., supra, pág. 302, también enfatizamos que aquellos hechos no trataban de una persona que gozaba de amplio reconoci-miento en Puerto Rico. Dicha conclusión sustentó el carácter de accesoriedad de la fotografía, por lo que resolvimos que no procedía la concesión de un remedio en daños a favor del señor Bonilla. Tales hechos son claramente distinguibles del caso de autos, pues las partes han estipulado, y es de conocimiento general, que el señor Vigoreaux Lorenzana es una figura pública, conocido en los ambientes de la política y del espectáculo.

 Cabe destacar que en gran parte de las jurisdicciones civilistas, las excep-ciones mencionadas, incluyendo las doctrinas de historia contemporánea (aus dem Bereich der Zeitgeschichte) y figuras públicas, no aplican cuando la imagen se utiliza para propósitos comerciales. Véanse: Gerstenberg, Urheberrecht Kommentar (dir.Schricker) 1987, pág. 770, en F. Igartúa Arregui, La apropiación comercial de la imagen y del nombre ajenos, Madrid, Ed. Tecnos, 1991, págs. 123-128; Amat Llari, op. cit, pág. 65.

 Véase, a modo ilustrativo, Zacchini v. Scripps-Howard Broadcasting Co., supra, pág. 574. En este caso, el Tribunal Supremo federal indicó que el estándar de malicia real, según elaborado para casos de difamación en New York Times Co. v. Sullivan, 376 U.S. 254 (1964), no aplica a supuestos de derecho a la publicidad.

 A tales efectos, y a modo persuasivo, Nowak y Rotunda expresan lo si-guiente:
“The Supreme Court has not yet held that First Amendment principles should restrict defamation or privacy actions when the subject matter of the action is a commercial performance or commercial information. Invasion of an individual’s right of publicity for commercial purposes may be subjected to greater state regulation than publication of information regarding a person’s private life or activity when that publication or activity is unrelated to a commercial venture.” Nowak and Rotunda, Treatise on Constitutional Law: Substance and Procedure 3d Sec. 20.36, págs. 502-503 (1999).

 Cf. Hustler Magazine v. Falwell, 485 U.S. 46, 50 (1988). En este caso, el Tribunal Supremo federal denegó una demanda por libelo presentada por Jerry Falwell contra Hustler Magazine, por haber publicado una parodia de un anuncio del licor Campari con una caricatura que representaba al ministro describiendo su “pri-mera experiencia” con el licor como un encuentro incestuoso con su madre en una letrina. La madre del ministro aparecía como una alcohólica promiscua y Falwell como un alcohólico hipócrita. El tribunal expresó que, por naturaleza, las parodias y las caricaturas pueden ser patentemente ofensivas y frecuentemente van dirigidas a herir los sentimientos del sujeto afectado. A pesar de esto, el tribunal reconoció que ambas formas literarias son un elemento muy importante y enriquecedor de la dis-cusión pública y política. A diferencia del caso de autos, la parodia publicada tenía la función inherente de ser una crítica social y no tenía el propósito de promover una transacción comercial. En Hustler, se trataba de una parodia de un anuncio, no de una expresión comercial como tal.

 Véase, a modo ilustrativo, White v. Samsung Electronics America, Inc., 971 F.2d 1395 (9no Cir. 1992). En este caso, Vanna White demandó a Samsung Electronics por violación a su derecho a la publicidad, a base de que este último publicó un anuncio para promover la venta de un VCR utilizando un robot con peluca, vestido y joyas, que jugaba a la ruleta y que gozaba de un gran parecido con la demandante. El noveno circuito determinó que Samsung se había apropiado indebidamente de la identidad de Vanna White y que la parodia no era relevante ante el contenido principal de la expresión comercial, a saber, promover la compraventa del producto anunciado.

 Véase, además, R. Posner, When is Parody Fair Use?, 21 J. Leg. Stud. 67 (1992).

 Cf., Cardtoons v. Major League Baseball Players, 95 F.3d. 959 (10mo Cir. 1996). En ese caso, las caricaturas de los beisbolistas eran claramente una parodia, con un evidente valor transformativo y artístico. Pese a la naturaleza comercial de las tapetas, y a diferencia del caso de autos, el propio producto mercadeado por Cardtoons era una parodia, por lo que no se trataba realmente de una expresión comercial. Véanse, además, a modo ilustrativo: ETW Corp. v. Jireh Pub., Inc. 332 F.3d 915, 918 (6to Cir. 2003); Hoffman v. Capital Cities/ABC, Inc. 255 F3d. 1180 (9no Cir. 2001); Comedy III Productions, Inc. v. Gary Saderup, 21 P.3d 797 (Cal. 2001).

 Véase, a modo comparativo, Von Hannover v. Alemania, 40 T.E.D.H. 1 (24 de junio de 2004). En ese caso, la princesa Carolina de Monaco acudió en alzada al Tribunal Europeo de Derechos Humanos para impugnar una sentencia del Tribunal Constitucional alemán que denegó la expedición de un injunction para paralizar la publicación de unas fotografías suyas —tomadas en lugares públicos y semipúbli-cos— en unas revistas sensacionalistas alemanas, por ésta ser una figura pública (personalidad absoluta de la historia contemporánea). El Tribunal Europeo de Dere-chos Humanos dictó sentencia contra Alemania por no aplicar adecuadamente el delicado balance de intereses entre el derecho a la intimidad de una figura pública y la libertad de expresión de varias revistas sensacionalistas. En síntesis, concluyó que *279 el derecho a la intimidad garantizado por el Art. 8 del Convenio Europeo de Derechos Humanos cobija a las figuras públicas y prevalece sobre los intereses de las mencio-nadas revistas, a la luz de que “el elemento determinante, a la hora de establecer un equilibrio entre la protección de la vida privada y la libertad de expresión, debe residir en la contribución que las fotografías y los artículos publicados hacen al debate de interés general”. Id., pág. 76.

 Véase, a modo persuasivo, J. Thomas McCarthy, The Rights of Publicity and Privacy, 2da ed., West Thomson, 2007, Vol. 1, Sec. 4:23, pág. 228:
“However, all this is not to say that a political figure has less right of publicity when another makes unpermitted use of his or her identity in a commercial, nonpolitical context. For example, a Justice of the United States Supreme Court should have the same scope of rights and remedies as anyone else against the unpermitted use of identity to draw attention to an ordinary commercial advertisement. Thus, a *280 Supreme Court Justice should have the right to an injunction and damages if the Ajax Coffee Co. runs a magazine advertisement without permission featuring a photo of the Justice and reading: ‘Justice Zelda Zak judges hard cases every day, but our coffee tasters have to make just as difficult distinctions in selecting only the finest coffee beans for Ajax Coffee.’ The fact that politicians, and especially former politicians, have appeared in commercial advertising to pitch products leads the public to not be^ surprised to see a politician’s name or picture used in an advertisement.” (Énfasis suplido.)

 A su vez; la causa de acción reconocida en el presente caso no se basa en la probabilidad de confusión por un endoso comercial bajo una falsa luz, sino en el derecho moral y patrimonial a la propia imagen del peticionario. Sin embargo, es razonable inferir que el anuncio de referencia puede inducir a los consumidores a asociar equivocadamente al producto con el peticionario.