EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jesús Castro Cotto<br><br>    Demandante-Recurrido<br><br>            v.<br><br>Tiendas Pitusa, Inc. H/N/C<br>Super Descuentos Pitusa de Bayamón,<br>Compañía de Seguros de Pitusa<br>Fulano de Tal Uno al Diez<br><br>    Demandado-Peticionario | Certiorari<br><br>2003 TSPR 101<br><br> 159 DPR ＿＿＿＿ |

Número del Caso: CC-2002-398


Fecha: 9 de junio de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional II

Juez Ponente:
                    Hon. Hiram A. Sánchez Martínez

Abogado de la Parte Peticionaria:
                    Lcdo. Ismael E. Marrero


Abogado de la Parte Recurrida:
                    Lcdo. José A. Rivera Robles


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jesús Castro Cotto

Demandante-Recurrido

       v.                               CC-2002-398       Certiorari

Tiendas Pitusa, Inc. H/N/C
Super Descuentos Pitusa de
Bayamón, Compañía de Seguros
De Pitusa, Fulano de Tal
Uno al diez
      Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 9 de junio de 2003.

El presente recurso presenta un asunto novel en nuestra jurisdicción. El mismo permite que nos pronunciemos por primera vez sobre la autoridad que tienen los establecimientos comerciales para requerirle a sus clientes que antes de salir de la tienda muestren el recibo de compras de los productos adquiridos. En el caso ante nos, Pitusa cuestiona la decisión del Tribunal de Circuito de Apelaciones confirmatoria la misma de una sentencia del Tribunal de Primera Instancia que declaró con lugar una acción en daños y perjuicios por requerirle al Sr. Castro Cotto, el demandante del

presente recurso, que mostrara el recibo de los productos adquiridos antes de salir del local. Por entender que el foro apelativo incidió al resolver la controversia de autos, revocamos.

I

De la prueba estipulada entre las partes y las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, se desprenden los siguientes hechos materiales. El señor Jesús Castro Cotto (en adelante, "el señor Castro Cotto) fue al Hipermercado Pitusa de Bayamón donde compró varios artículos por los que pagó $8.31. Le empacaron la mercancía en una bolsa y le entregaron un recibo de compra. Cuando el señor Castro Cotto se disponía salir de la tienda, un guardia de seguridad de dicho negocio que se encontraba apostado en la salida le requirió que le mostrara el recibo de compra. El señor Castro Cotto se rehusó y alegó que no estaba obligado a enseñarlo. Asimismo, le preguntó al guardia si era que él—el señor Castro Cotto—tenía "cara de pillo". Además, le pidió que verificara con la cajera si él había pagado la mercancía.

El guardia de seguridad procedió entonces a llamar a su supervisor, el señor Nelson Rivera, quien le explicó al señor Castro Cotto que el cotejo del recibo de compra era una norma rutinaria de dicho establecimiento que se hacía con todos los clientes. Mediante la misma el negocio verifica que la fecha y hora impresa en el recibo

corresponden efectivamente al momento en que el cliente se dispone salir del local, procurando de esa manera evitar el hurto de la mercancía del local. A tales efectos, el señor Rivera le pidió que cooperara mostrando el recibo de compra. Finalmente, el señor Castro Cotto mostró su recibo de compra y se llevó la mercancía. De la prueba ante nos surge que el incidente duró de diez a quince minutos y que no hubo contacto físico alguno.[1]

Con motivo de dicha intervención, el señor Castro Cotto presentó una demanda en daños y perjuicios contra Tiendas Pitusa, Inc.[2] En la misma, alegó que había sido detenido ilegalmente por dos empleados de seguridad al negarse a mostrar el recibo de compra, actuación que le había violado sus derechos constitucionales y le había causado daños.

Luego de los procedimientos de rigor, el Tribunal de Primera Instancia declaró con lugar la demanda y condenó a Pitusa a pagar la suma de $7,500 por los daños ocasionados y $2,500 en concepto de honorarios de abogados. Inconforme con dicha determinación, Pitusa acudió ante el Tribunal de Circuito de Apelaciones quien, a su vez, confirmó el dictamen impugnado.

---

[1] De la prueba estipulada surge que para esa fecha, el señor Castro Cotto padecía de una condición de presión alta para la cual tomaba medicamentos. Según surge de la prueba estipulada, luego del incidente el señor Castro Cotto continuó con su rutina diaria y sus actividades habituales, por lo que podemos concluir que la condición del demandante no se afectó por motivo del alegado incidente.

[2] La demanda fue posteriormente enmendada para incluir como demandada a la Corporación Distribuidora de Provisiones y Comestibles, Inc.

De esta determinación acudió ante nos Pitusa alegando, en síntesis, que incidió el foro apelativo al confirmar la determinación del Tribunal de Primera Instancia declarando con lugar la demanda en ausencia de un acto negligente o culposo, contrario a lo dispuesto por el Art. 1802 y la doctrina jurisprudencial imperante. Incidió además el foro apelativo al confirmar la determinación del foro de instancia de otorgar daños que no habían sido probados. Por último, el peticionario alegó que erró el Tribunal de Circuito de Apelaciones al sostener la imposición de temeridad y la condena de Honorarios de Abogado.

El señor Castro Cotto, por su parte, alegó en su comparecencia ante nos que el sistema de cotejo de recibos choca contra normas y principios fundamentales de nuestro ordenamiento jurídico tales como la inviolabilidad de la dignidad del ser humano y la protección contra ataques abusivos a la honra y reputación. Esto debido a que dicho sistema atenta contra la integridad personal y la reputación de los clientes de un negocio. Sostuvo además que, ante la negativa de mostrar el recibo de pago, fue restringido de su libertad por espacio de diez a quince minutos lo que le causó daños emocionales. Ello, ya que entendía que lo estaban tratando como a un pillo al exigirle que enseñara el recibo de compras para verificarlo. Además, alegó que "dicho incidente podía en alguna forma afectar el desempeño de su profesión de

contable público pues todo ocurrió en público ante la presencia de otros clientes y de los empleados de la peticionaria". Luego de examinar las comparecencias de las partes, estamos en posición de resolver.

II

A

*Principios generales sobre la responsabilidad ex* delicto *en acciones por detención ilegal*

En Puerto Rico existe una acción de daños y perjuicios por detención ilegal la cual se ventila bajo el Art. 1802 del Código Civil, 31 L.P.R.A. 5141. La misma se define como el acto de restringir ilegalmente a una persona contra su voluntad o libertad de acción personal. Ayala v. San Juan Racing Corp., 112 D.P.R. 804 (1982). De configurarse dicha detención el causante de la misma responderá en daños y perjuicios si dicha actuación fue culposa.

La acción de daños y perjuicios por detención ilegal está dirigida a proteger el derecho de libertad del que gozan todos los individuos. Es por ello que no se requiere que la persona perjudicada sea arrestada o encarcelada para que se configure la acción. Basta que el demandado interfiera con la libertad total de movimiento del perjudicado, independientemente de donde se encuentren, para que se configure la causa de acción. Tampoco es necesario el uso de fuerza, ni que el perjudicado ofrezca resistencia violenta. Dobbins v. Hato Rey Psychiatric

Hospital, *supra*; Supermercado Grande Inc., v. Alamo Pérez, res. el 12 de septiembre de 2002, 2002 T.S.P.R 116. Cabe mencionar además que la duración de la detención sólo surtirá efectos en cuanto al alcance de los daños y perjuicios sufridos, ya que la mera detención ilegal, por más mínima que sea, da derecho a una causa de acción.

Hemos reconocido que la acción de detención ilegal se configura cuando están presente los siguientes elementos: 1) restricción intencional de la libertad de movimiento de una persona; 2) que la persona detenida esté consciente de la detención y no haya consentido a ella; y, 3) que la detención haya causado daños. Dobbins v. Hato Rey Psychiatric Hospital, 87 D.P.R. 30 (1962); H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, 2da ed. San Juan, Pubs. J.T.S. 1986, Vol. I, Cap. IV, §4.05.

Por último, debemos mencionar que en reiteradas ocasiones este Tribunal ha resuelto que la procedencia de dicha causa de acción va a depender de criterios de razonabilidad, a tenor con las circunstancias particulares de cada caso. Véase, Parrilla Báez v. Airport Catering Services, 133 D.P.R. 263 (1993); Ayala v. San Juan Racing, *supra*. Ello, ya que hay que hacer un balance adecuado entre el deber que tiene toda persona de cooperar en la lucha contra el crimen y el derecho que tiene toda persona a no ser privada ilegalmente de su libertad.

B

En el caso de autos el señor Castro Cotto se disponía salir de uno de los establecimientos de Pitusa cuando se le requirió que mostrase el recibo de compra de la mercancía adquirida. Dicho requerimiento, según señaló Pitusa, se le hacía a todo cliente que salía del local. <u>Mediante dicha práctica se verificaba en el recibo la fecha y hora de la compra, y se iniciaba el mismo por el empleado de turno. De ese modo el negocio protege su mercancía verificando que la compra, en efecto, se llevó a cabo en ese día y a esa hora.</u>

De la prueba estipulada se desprende que el guardia le solicitó al señor Castro Cotto que le mostrara el recibo de compra, a lo cual éste se negó alegando que no estaba obligado a hacerlo. El guardia procedió entonces a llamar a su supervisor quien le explicó que el cotejo de recibos es una práctica rutinaria del negocio que se hacía con todos los clientes. El señor Castro Cotto accedió entonces al pedido, mostró el recibo de compra y salió del establecimiento con su mercancía.

De los hechos antes transcritos no se desprende que los empleados de Pitusa hubiesen detenido ilegalmente al señor Castro Cotto. En ningún momento se le prohibió al demandante abandonar el local, ni se le restringió su libertad de movimiento. Se le solicitó que mostrara su recibo, éste se negó, y cuando le explicaron que era una práctica rutinaria del negocio para con todos sus clientes

el señor Castro Cotto accedió al pedido y se marchó del local. Además, estimamos que en el caso de autos no se probó que la parte demandada tuviese la intención de producir la detención o tuviese la certeza sustancial de que el acto perpetrado la produciría. Por último, no nos parece que dentro de las circunstancias particulares del caso de autos, los empleados de Pitusa hubieran actuado de forma irrazonable. Por todo lo cual, resolvemos que carece de mérito la acción de detención ilegal en contra de las tiendas Pitusa.

III

A

Por otro lado, el Tribunal de Circuito de Apelaciones resolvió que el sistema de cotejo de recibos choca contra normas y principios fundamentales de nuestro ordenamiento jurídico como lo son la protección contra ataques abusivos a la honra, la reputación y la vida privada o familiar; y la inviolabilidad de la dignidad del ser humano. En síntesis, señaló que dicho sistema atenta contra la integridad personal de un individuo en la medida en que establece una presunción de que el cliente no ha pagado la mercancía, y le impone la obligación de probar su honestidad enseñando el recibo de compra al salir del negocio.

La Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico contiene varias disposiciones que

protegen el derecho a la intimidad. Entre éstas las Secciones 1 y 8 que disponen lo siguiente:

Sección 1: La dignidad del ser humano es inviolable.

Sección 8: Toda persona tiene derecho a protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar.

El derecho a la intimidad es de tal envergadura que el mismo opera ex propio vigore, y puede hacerse valer entre personas privadas. "[E]ste derecho constitucional impone a toda persona el deber de no inmiscuirse en la vida privada o familiar de los demás seres humanos". Colón v. Romero Barceló, 112 D.P.R. 573 (1982); Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978); E.L.A. v. Hermandad de Empleados, 104 D.P.R. 436 (1975). Es por ello que la protección opera tanto frente al Estado como ante personas particulares.

Este derecho de intimidad puede hacerse valer mediante una demanda por daños al amparo del Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. 5141, de forma tal que el agraviado pueda resarcirse por los perjuicios causados por una violación del deber de no intervenir con la intimidad de los demás. *Véase*, Soc. de Gananciales v. Royal Bank de P.R. 145 D.P.R. 178 (1998), citando a Colón v. Romero Barceló, *supra*.

Un examen minucioso de nuestros previos pronunciamientos revela que este derecho se lesiona, entre otras instancias, cuando se limita la facultad de un individuo de tomar

decisiones personales, familiares o íntimas, Pueblo v. Duarte, 109 D.P.R. 596 (1980); o cuando se requiere exponer públicamente la vida íntima de una pareja para poder divorciarse, Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1976). De igual forma, se lesiona el derecho de intimidad de y la protección contra ataques abusivos a la honra y la reputación personal cuando se viola la tranquilidad del hogar, Sucn. de Victoria v. Iglesia Pentecostal, 102 D.P.R. 20 (1974); cuando la constante presencia de una foto en los medios de comunicación representa una indebida intromisión en la vida familiar, Colón v. Romero Barceló, *supra*; o, cuando se hostiga a una persona mediante el uso del sistema telefónico, P.R. Tel. Co. v. Martínez, 114 D.P.R. 328 (1983).

No obstante, el derecho a la intimidad no es un derecho absoluto, ni "vence a todo valor en conflicto bajo todo supuesto posible." E.L.A. v. P.R. Tel. Co., 114 D.P.R. 398, 401 (1983). El mandato constitucional de que se proteja a las personas contra ataques abusivos a su intimidad tiene necesariamente que examinarse teniendo presente consideraciones de tiempo y lugar. Pueblo v. Falú Martínez, 116 D.P.R 828, 838 (1986). Por lo tanto, ante un reclamo de violación a este derecho constitucional "la cuestión central es si la persona tiene derecho a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete".

E.L.A. v. P.R. Tel. Co., *supra*, Pág. 402. Es decir, el criterio rector para determinar si existe o no la referida protección, es si quien la reclama tiene una expectativa legítima a la intimidad bajo las circunstancias particulares del caso. Así, lo que constituye un "ataque abusivo" o una "intromisión a la intimidad" dependerá de las circunstancias particulares en que se manifiesta la acción estadual o personal, y la naturaleza del interés privado que se quiere proteger.

En el caso de autos, los intereses encontrados son el derecho que tiene el dueño de un negocio a proteger su propiedad contra hurtos, *vis a vis*, el derecho que tienen todo individuo contra ataques a su honor, su reputación y su vida personal.

En Sociedad de Gananciales v. González Padín, 117 D.P.R. 94 (1986), resolvimos que, previa la observancia de ciertas precauciones y salvaguardas, el propietario de un 'bien' tiene el derecho de hacer uso de mecanismos, instrumentos o estructuras que no sean inherentemente peligrosas ni atenten contra la integridad personal de los humanos con el legítimo propósito de proteger su propiedad, y de ese modo evitar que personas inescrupulosas le hurten su mercancía. En dicho caso, esta Curia tuvo oportunidad de examinar la utilización de un sistema de seguridad en una empresa comercial conocido como "sensormatic". A tales efectos resolvimos lo siguiente:

> La instalación y utilización...del sistema conocido como sensormatic, o cualquier otro similar, ciertamente no choca contra ninguno de los principios pertinentes y aplicables de nuestro ordenamiento jurídico. Se trata de un mecanismo electrónico que es utilizado con el fin o propósito legítimo de evitar el hurto indiscriminado de la mercancía existente en dichos establecimientos, el cual ni es inherentemente peligroso ni es uno que atenta contra la integridad personal de los clientes de los mismos. Resolvemos, en su consecuencia que, previa la observancia de ciertos requisitos y salvaguardas, el dueño de un establecimiento comercial en Puerto Rico puede lícitamente hacer uso de un sistema de esa naturaleza en "defensa" de su derecho de propiedad.

A la luz de toda esta normativa, procede resolver si, bajo las circunstancias particulares del caso de autos, el señor Castro Cotto tenía una expectativa real de intimidad, y si el 'mecanismo' utilizado en las Tiendas Pitusa es inherentemente peligroso o atenta contra la integridad personal de los clientes que asisten a dicho negocio.

B

En el caso de autos, las posibles violaciones a la intimidad y el ataque abusivo a la honra y la reputación, emanarían de un requerimiento por parte del establecimiento comercial de que sus clientes muestren el recibo de la compra antes de salir del negocio. Dicho requerimiento, a su vez, responde a un interés genuino por parte del negocio de proteger su propiedad. Mediante dicha práctica el establecimiento verifica que la fecha y hora impresa en el recibo correspondan efectivamente al momento en que el

<u>cliente se dispone salir del local.</u> De este modo el local controla que personas que hayan comprado anteriormente en dicho negocio no estén utilizando las fundas y los recibos de otras compras para sustraer mercancía del establecimiento de forma ilegal. Estimamos que dicha medida no es irrazonable o inherentemente peligrosa para el cliente. Tampoco consideramos que la misma atente contra la integridad personal de los clientes o invada la intimidad de los mismos.

Cabe recordar que el caso de autos se trata de una persona que fue voluntariamente a un establecimiento comercial para comprar ciertos productos. Seleccionó la mercancía de entre los artículos expuestos al público y luego procedió a la caja registradora donde una empleada le cobró por los mismos. Antes de salir del local, se le solicitó que mostrara el recibo de compras como parte de un sistema de seguridad de dicho negocio. No vemos como puede existir, ante tales circunstancias, un derecho de intimidad sobre el señor Castro Cotto y/o la mercancía adquirida por éste. **Máxime cuando en <u>ningún</u> momento los empleados de Pitusa solicitaron verificar el contenido de la bolsa, ni le preguntaron al señor Castro Cotto sobre la mercancía que había adquirido. Meramente se le solicitó que enseñara el recibo de la compra, con el propósito <u>único</u> de cotejar que la compra se hubiese efectuado ese día y en ese momento.**

En el caso de autos no estamos ante ninguna de las situaciones que antes hemos considerado como nocivas al derecho de intimidad, ni podemos coincidir con el señor Castro Cotto al alegar que tenía un derecho de intimidad y que el mismo fue vulnerado por las actuaciones de Pitusa. Estimamos que la práctica de Pitusa de cotejar el recibo de compra cuando un cliente se dispone salir de la tienda con el propósito único de verificar que la compra se había hecho recientemente, constituye una actuación legítima de dicho negocio para salvaguardar su mercancía de apropiaciones ilegales.

En vista de todo lo anterior, resolvemos que no se vulneró el derecho de intimidad del señor Castro Cotto cuando la parte demanda le solicitó que mostrara el recibo de compra al salir del establecimiento.

IV

Por los fundamentos antes esbozados, se revoca el dictamen del Tribunal Apelativo, y se desestima el presente recurso.

Se dictará la Sentencia correspondiente.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jesús Castro Cotto

Demandante-Recurrido

       v.                              CC-2002-398        Certiorari

Tiendas Pitusa, Inc. H/N/C
Super Descuentos Pitusa de
Bayamón, Compañía de Seguros
De Pitusa, Fulano de Tal
Uno al diez
    Demandado-Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 9 de junio de 2003.

Por los fundamentos expresados en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca el dictamen del Tribunal Apelativo y se desestima el presente recurso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y los Jueces Asociados señores Fuster Berlingeri y Rivera Pérez disienten sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo