ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TANYA FIGUEROA COSS<br><br>Apelante<br><br>v.<br><br>HOSPITAL AUXILIO MUTUO y/o SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO, AGENTE RESIDENTE JORGE MATTA y OTROS<br><br>Apelados | KLAN202500522 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Núm.: SJ2024CV10244<br><br>Sobre: Detención Ilegal |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de agosto de 2025.

Comparece la parte demandante y apelante, Sra. Tanya Figueroa Coss (señora Figueroa Coss), quien solicita nuestra intervención para dejar sin efecto dos *Sentencias Parciales* emitidas y notificadas por el Tribunal de Primera Instancia de San Juan (TPI), el 10 y el 30 de abril de 2025, respectivamente. En los aludidos pronunciamientos judiciales, el TPI declaró *Ha Lugar* sendas solicitudes desestimatorias, instadas por las partes demandadas y apeladas; a saber: la *Moción de desestimación bajo la Regla 10.2 de Procedimiento Civil* presentada por el Hospital Español Auxilio Mutuo de Puerto Rico, Inc. (Hospital), María Vega (señora Vega), Jeanna E. Martínez Rivera (señora Martínez Rivera), Liza A. Matos Santos (señora Matos Santos) y Jafet Díaz Pérez (señor Díaz Pérez); así como la *Moción de desestimación parcial* incoada por Capitol Security Police, Inc. (CSP) y Rachel Figueroa Andino (señora Figueroa Andino). En consecuencia, el TPI desestimó la reclamación civil contra estas partes por no haber una causa de acción que justificara la concesión de un remedio.

Por los fundamentos que expondremos, acordamos confirmar ambos dictámenes parciales.

Núm identificador

SEN2025_____

**I.**

El presente caso se inició el 2 de noviembre de 2024, ocasión en que la señora Figueroa Coss instó una *Demanda*[1] en contra del Hospital, señora Vega, señora Martínez Rivera, señora Matos Santos, señor Díaz Pérez, Elizabeth Salas (señora Salas), Sandra N. Bleck Benejam (señora Bleck Benejam), CSP, señora Figueroa Andino, Miguel Portilla Torres (señor Portilla Torres). Alegó daños y perjuicios, restricción a la libertad, privación y posesión ilegal de arma de fuego autorizada.[2]

En esencia, la demandante adujo que, el 20 de febrero de 2024, arribó al Hospital para trabajar el turno de 7:00 am a 3:00 pm. Al llegar, se percató que olvidó las llaves para abrir el candado del casillero que tenía asignado. Por ello, decidió guardar su cartera en el casillero de la codemandada señora Salas, amiga y compañera de trabajo. De acuerdo con la demandante, eligió el casillero de la señora Salas porque esta última no utilizaba candado.

Ese día, se le notificó que la administración del Hospital realizaría inspecciones en los casilleros, debido a información sobre el hurto de narcóticos. A esos efectos, se le solicitó que se personara al área de los casilleros. Al ir, la señora Figueroa Coss vio a la señora Salas ubicada frente a su casillero, el cual se encontraba abierto y expuesto. También identificó en el lugar a las señoras Vega, Matos Santos y Martínez Rivera, en calidad de oficiales en funciones del Hospital. Con ellas se encontraba la señora Figueroa Andino, empleada de CSP, con autorización del Gerente de Seguridad, el señor Díaz Pérez; además, estaba presente la señora Bleck Benejam, en representación de la Unión. La demandante alegó que la señora Matos Santos inquirió sobre la cartera que se hallaba en el casillero de la señora Salas. La demandante respondió que era suya y, acto seguido, la señora Matos Santos le informó que su cartera tenía que ser

---

[1] Apéndice de CSP, págs. 1-11; entrada 1 del Sistema Unificado de Manejo y Administración de Casos (SUMAC). La señora Figueroa Coss únicamente anejó al Apéndice los dictámenes impugnados.
[2] La *Demanda* fue enmendada el 18 de diciembre de 2024, a los fines de corregir el nombre del Hospital. Véase, Apéndice de CSP, págs. 12-22; entrada 8 de SUMAC.

inspeccionada en ese momento. La señora Figueroa Andino arguyó que, sin su autorización, los presentes incautaron su cartera. Entonces, la señora Andino Figueroa procedió a insertar su mano en la cartera de la demandante, de donde extrajo y tomó control de un arma de fuego Smith & Wesson M&P9 M2.0 Compact 9MM, propiedad de la señora Figueroa Coss y para la cual posee licencia. Además, por instrucciones de la señora Matos Santos sacó de la cartera otras pertenencias, incluyendo su licencia de armas, la cual fotocopiaron.

La demandante indicó que los funcionarios presentes iniciaron presuntos ataques verbales en su contra en los que señalaron que no podía portar armas de fuego en las instalaciones del Hospital. Sobre esto, sostuvo que contravenía su derecho a proteger su seguridad personal y familiar, en alusión a ciertos incidentes previos con su expareja, Chayanne R. Quiñones Álvarez. Luego, ante indicaciones de la señora Vega para que abandonara el Hospital, la demandante buscó a la señora Figueroa Andino para que le entregara su arma de fuego, lo cual realizó fuera de las instalaciones.

Por estos hechos, el Hospital despidió a la señora Figueroa Coss. Ello así, debido a una política del Hospital que prohíbe a sus empleados poseer y portar armas de fuego en sus instalaciones. La demandante adujo que, como consecuencia de esta sucesión de eventos, sufrió daños, al infringirse su expectativa de intimidad y por la aplicación arbitraria del *Manual del Empleado*. Alegó que fue restringida de su libertad y privada ilegalmente de la posesión de su arma de fuego, lo cual le generó daños. Arguyó que la política del Hospital contravino su derecho a proteger su seguridad personal y familiar, ya que afirmó que portaba el arma de fuego por incidentes habidos entre ésta y su expareja. Por estos hechos alegados, la demandante reclamó una suma global ascendente a $1,050,000.00.

El 21 de marzo de 2025, el Hospital, la señora Vega, la señora Martínez Rivera, la señora Matos Santos y el señor Díaz Pérez comparecieron mediante *Moción de desestimación bajo la Regla 10.2 de*

*Procedimiento Civil.*[3] En ésta, esbozaron que la *Demanda* no justificaba la concesión de remedio alguno. Indicaron que el despido estuvo acorde con las políticas de la institución hospitalaria y que la demandante se encontraba en un foro de arbitraje para dilucidar el despido, de conformidad con el procedimiento de quejas y agravios provisto en el convenio colectivo. Una vez demostrado que la señora Figueroa Coss recibió el *Manual del Empleado*[4] el 7 de septiembre de 2023,[5] los codemandados acotaron que el documento establece que no existe una expectativa de intimidad por el uso de los casilleros.[6] Los casilleros son propiedad del Hospital y están sujetos a inspección en cualquier momento, ya que no existe ni debe existir expectativa de privacidad con respecto al contenido de éstos. Añadieron que el Hospital cuenta con una política institucional de prohibición absoluta a la portación de armas de fuego en sus instalaciones y que la violación a dicha norma por un empleado conlleva como sanción el despido inmediato.[7]

Los codemandados sostuvieron que la señora Figueroa Coss no sufrió ningún daño resarcible; primero porque el arma de fuego le fue devuelta el mismo día en que le fue ocupada, y segundo, porque no se configuraron los elementos de la causa de acción por detención ilegal. Además, resaltaron que la señora Figueroa Coss perdió posesión de su arma voluntariamente toda vez que la dejó en un casillero propiedad del Hospital, que le fue asignado a un tercero particular y que dicho casillero no tenía candado. Señalaron, inclusive, que el arma de fuego no sufrió deterioro o pérdida alguna. En vista de lo anterior, solicitaron la desestimación de la *Demanda Enmendada*.

---

[3] Apéndice del Hospital, págs. 12-39; entrada 38 de SUMAC.
[4] Refiérase al Apéndice de CSP, págs. 36-142 y 143, *Manual del Empleado* y *Manual del Empleado - Acuse de Recibo*; entrada 38 de SUMAC, Anejos 1 y 2.
[5] Apéndice del Hospital, pág. 39; entrada 38 de SUMAC, Anejo 2, *Manual del Empleado - Acuse de Recibo*.
[6] Apéndice del Hospital, pág. 34; entrada 38 de SUMAC, Anejo 1, *Manual del Empleado*, pág. 59, inciso 19.
[7] Apéndice del Hospital, pág. 35; entrada 38 de SUMAC, Anejo 1, *Manual del Empleado*, pág. 98, inciso 50.

La señora Figueroa Coss replicó.[8] Insistió sobre su derecho a la intimidad no renunciado en el ámbito laboral, en referencia a la protección y uso de su cartera y los casilleros. Esgrimió que, en su caso, no hubo una notificación de registro para la intervención por parte del Hospital. En cuanto a la restricción a la libertad, indicó que ésta se le privó cuando se personó al área de los casilleros, donde vio el casillero abierto y sus pertenencias expuestas y en control del Hospital, sin libertad para tomarlas y trasladarse a otro lugar.

Por su parte, CSP y la señora Figueroa Andino instaron *Solicitud de desestimación parcial*.[9] Plantearon que la señora Figueroa Coss no consignó alegaciones plausibles que establecieran el incumplimiento con algún deber jurídico impuesto o una reclamación por responsabilidad civil extracontractual. Primero, aseveraron que se llevó a cabo una inspección de rutina de los casilleros de los empleados. Segundo, sostuvieron que la demandante alegó de forma estereotipada que los codemandados restringieron su libertad al promover una inspección por motivo de hurto de narcóticos y porque fue escoltada fuera del Hospital. Imputaron que dichas alegaciones carecían de los elementos de una causa de acción por restricción a la libertad por parte de Capitol o la señora Figueroa Andino. Ello así, ya que la demandante no proveyó hechos demostrativos que demostraran la intención de restringir la libertad de movimiento ni existió un acto afirmativo encaminado a producir la restricción de la libertad de la demandante.

La señora Figueroa Coss no presentó oposición al escrito judicial desestimatorio de CSP y la empleada.[10]

Así las cosas, el 10 de abril de 2025, el TPI emitió y notificó una *Sentencia Parcial* mediante la cual declaró *Ha Lugar* la moción de desestimación presentada por el Hospital, la señora Vega, la señora

---

[8] Apéndice del Hospital, págs. 40-52; entrada 57 de SUMAC.
[9] Apéndice de CSP, págs. 157-165; entrada 58 de SUMAC.
[10] CSP y la señora Figueroa Andino instaron por separado sendas alegaciones responsivas a la *Demanda Enmendada*. Véase, entradas 39 y 51 de SUMAC.

Martínez Rivera, la señora Matos Santos y el señor Díaz Pérez; y mandató el cierre y archivo de las causas de acción incoadas.[11] En lo que respecta al planteamiento de violación al derecho a la intimidad, el determinó que el *Manual del Empleado* del Hospital expresamente establecía "que no existía expectativa de privacidad en los casilleros ni en el contenido de objetos personales depositados en ellos, incluyendo bultos y carteras".[12] En cuanto a la privación de la posesión del arma de fuego, justipreció que la demandante no tuvo pérdidas, ni daño alguno como consecuencia de la ocupación del arma, pues le fue devuelta el mismo día. En lo relacionado a la alegada restricción de libertad, el TPI coligió que no se cumplieron los elementos jurídicos necesarios para configurarse una causa de acción por detención ilegal.

Posteriormente, el 30 de abril de 2025, el TPI emitió y notificó una *Sentencia Parcial* mediante la cual declaró *Ha Lugar* la solicitud de desestimación presentada por CSP y la señora Figueroa Andino.[13] En consecuencia, ordenó el cierre y archivo de la reclamación civil contra ambas partes.

En desacuerdo, la señora Figuera Coss presentó una *Moción en solicitud de reconsideración a Sentencia* el 25 de abril de 2025, en cuanto al Hospital y otros.[14] Luego, la demandante presentó una *Moción en solicitud de reconsideración* el 6 de mayo de 2025, en cuanto CSP y la señora Figueroa Andino.[15] Por su parte, el Hospital y otros comparecieron mediante escrito en *Oposición a reconsideración.*[16] De igual forma, CSP y la señora Figueroa Andino presentaron un escrito intitulado *Oposición a "Moción de Reconsideración".*[17] En respuesta, luego de evaluar las posturas de las partes y examinar el expediente ante sí, el 9 de mayo

---

[11] Apéndice del recurso, Anejo I; entrada 60 de SUMAC.
[12] *Id.*, pág. 2. El enunciado es una interpretación del TPI.
[13] Apéndice del recurso, Anejo II; entrada 63 de SUMAC.
[14] Apéndice del Hospital, págs. 53-65; entrada 61 de SUMAC.
[15] Apéndice de CSP, págs. 187-193; entrada 64 de SUMAC.
[16] Apéndice del Hospital, págs. 66-78; entrada 66 de SUMAC.
[17] Apéndice de CSP, págs. 207-212; entrada 67 de SUMAC.

de 2025, el TPI emitió sendas *Resoluciones* en las cuales declaró *No Ha Lugar* ambas peticiones de reconsideración.[18]

Aún en desacuerdo, la señora Figueroa Coss acudió ante esto foro apelativo intermedio y planteó la comisión del siguiente error:

> Erró el Honorable Tribunal de Primera Instancia al archivar las causas de Acción de epígrafe, basada la determinación de Instancia en el Manual del [E]mpleado del Hospital, cuando las causas de acción de epígrafe se desprenden del registro ilegal, el manejo ilegal del arma de fuego y la restricción a la libertad, así como fraccionando el presente caso por las partes indispensables como unos asuntos diferentes.

Por su parte, el Hospital y CSP, junto a sus empleados, comparecieron mediante sus respectivos alegatos en oposición a la apelación. Con el beneficio de sus comparecencias, procedemos a resolver.

**II.**

**A.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, permite que el demandado solicite la desestimación de la demanda, antes de presentar una contestación. Las razones para solicitar la desestimación son las siguientes: (1) falta de jurisdicción sobre la materia, (2) falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento, (4) insuficiencia del diligenciamiento del emplazamiento, (5) **dejar de exponer una reclamación que justifique la concesión de un remedio** y (6) dejar de acumular una parte indispensable. *Costas Elena y otros v. Magic Sport y otros,* 213 DPR 523 (2024); *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

El Tribunal Supremo de Puerto Rico ratificó en *Costas Elena y otros v. Magic Sport y otros, supra,* las normas que rigen la desestimación de una demanda basada en el inciso 5 de la Regla 10.2, *supra.* Estas normas son las siguientes:

> (1) La desestimación procede cuando de las alegaciones de la demanda, surge que alguna de las defensas afirmativas derrotara la pretensión del demandante.

---

[18] Apéndice del recurso, Anejos III y IV; entradas 68 y 69 de SUMAC.

(2) Al evaluar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* el tribunal tiene que tomar como ciertos todos los hechos bien alegados en la demanda, aseverados de manera clara y concluyente y que de su faz no dan margen a dudas.

(3) Los tribunales que atienden una moción basada en la Regla 10.5, *supra,* tienen que evaluar las alegaciones de la demanda conjuntamente, y de la forma más favorable para el demandante.

(4) Toda duda debe resolverse a favor del demandante.

(5) El demandado tiene que establecer con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquiera estado de Derecho que se pudiera probar en apoyo a su reclamación. Véase, además, *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 84 (2023).

La privación de un litigante de su día en corte sólo procede en casos extremos. Ahora bien, la desestimación al amparo de la Regla 10.2(5), *supra,* prosperará si luego de realizar el análisis requerido, el tribunal entiende que no se cumple con el estándar de plausibilidad. Los tribunales no pueden dar paso a una demanda insuficiente bajo el pretexto de que las alegaciones conclusivas podrán ser probadas con el descubrimiento de prueba. *Costas Elena y otros v. Magic Sport y otros, supra.*

Ahora bien, nuestro Tribunal Supremo ha pautado que, ante una solicitud de desestimación al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra,* si bien los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, deben determinar si, a base de éstos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Id.*, págs. 533-534. "[S]i tras este análisis el Tribunal aún entiende que no se cumple con el **estándar de plausibilidad**, entonces debe desestimar la demanda, pues no puede permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba". (Énfasis nuestro). *Id.*, pág. 534. Es decir, la carencia de alegar hechos que plausiblemente apoyen los remedios solicitados debe resultar en la

desestimación del recurso. Véase, *Ashcroft v. Iqbal,* 556 US 662 (2009) y *Bell Atl. Corp. v. Twombly,* 550 US 544 (2007).

**B.**

El Artículo II, Sección 1, de nuestra Constitución dispone que: "[l]a dignidad del ser humano es inviolable. Todos los hombres son iguales ante la Ley". La Sección 8 del mismo Artículo establece que: "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, su reputación y a su vida privada y familiar". Como sabemos, en Puerto Rico, el derecho a la intimidad goza de una "factura más ancha" que la tradicional y su protección es más amplia que la concedida por la Constitución Federal. *Arroyo v. Rattan Specialties, Inc.,* 117 DPR 35, 64 (1986); *Colón v. Romero Barceló,* 112 DPR 573, 576 (1982); *Figueroa v. E.L.A.,* 107 DPR 250, 258-259 (1978); *E.L.A. v. Hermandad de Empleados,* 104 DPR 436, 439 (1975).

El derecho a la intimidad es uno de los llamados derechos de la personalidad de índole innata y privada. *Indulac v. Unión,* 207 DPR 279, 302 (2021), que cita con aprobación a J. Castán Tobeñas, *Derecho civil español, común y foral,* 11ma ed., Madrid, Ed. Reus, 1971, T. I, Vol. II, pág. 325. Estos derechos operan *ex proprio vigore,* por lo que no es necesario que concurra con el requisito de acción legislativa para invocarlo frente a particulares. *Colón v. Romero Barceló, supra,* pág. 576. Al operar *ex proprio vigore,* es oponible a patronos privados y éstos vienen obligados a respetar el derecho a la intimidad de sus empleados igual que un patrono público. *Arroyo v. Rattan Specialties, Inc., supra,* pág. 64. Su reclamación ante personas privadas obliga a los patronos "a no infringir la zona de autonomía individual de sus empleados que protege el derecho a la intimidad". *Soc. de Gananciales v. Royal Bank de P.R.,* 145 DPR 178, 202-203 (1998). Una violación al ámbito individual constitucionalmente protegido impone al patrono la obligación jurídica de reparar el daño causado.

Aunque el derecho constitucional a la intimidad es uno de la más alta jerarquía en nuestro ordenamiento jurídico, no es absoluto ni "vence a todo valor en conflicto bajo todo supuesto posible". *E.L.A. v. P.R. Tel. Co.*, 114 DPR 394, 401 (1983). Por estar válidamente limitado por consideraciones de tiempo y lugar, ante reclamos de violación al derecho a la intimidad, "la cuestión central es si la persona tiene derecho a abrigar, donde sea, *dentro de las circunstancias del caso específico*, la expectativa de que su intimidad se respete". *Id.*, pág. 402. La razonabilidad de la expectativa de intimidad depende de dos elementos, uno subjetivo y uno objetivo. *Vega et al. v. Telefónica*, 156 DPR 584, 602 (2002). Que el reclamante, dentro de las circunstancias de su caso, tenga una expectativa real de que su intimidad se respete (criterio subjetivo), y que la sociedad esté dispuesta a reconocer esa expectativa como legítima o razonable (criterio objetivo). *Id.*

En *Vega et al.* v. *Telefónica*, el Tribunal Supremo reconoció que **el patrono tiene derecho a proteger de forma razonable su propiedad privada, por razones de seguridad y en aras de reducir o prevenir incidencia de sabotaje o robos**. Expuesta las razones, se evalúa: (1) cuán intrusivo es el método escogido por el patrono en la intimidad del empleado *vis a vis* el propósito y la necesidad de la vigilancia; (2) las características particulares del lugar de empleo, como por ejemplo, si es un espacio abierto o cerrado y el acceso a éste; (3) las funciones de los empleados observados; (4) la función del establecimiento que es objeto de vigilancia; (5) las capacidades técnicas y de sofisticación del equipo instalado; y (6) la publicación, notificación y utilización que haga el patrono del sistema, entre otras. *Id.*, págs. 608-609.

**C.**

Entre las causas de acción que nuestro sistema de derecho reconoce, al amparo del Art. 1536 del Código Civil, 31 LPRA sec. 10801, se encuentra una causa de acción en daños y perjuicios por detención ilegal. *Castro v. Tiendas Pitusa*, 159 DPR 650, 654 (2003). El Tribunal

Supremo definió el concepto de detención ilegal como "el acto de restringir ilegalmente a una persona contra su voluntad o libertad de acción personal". *Ayala v. San Juan Racing Corp.*, 112 DPR 804, 813 (1982). En nuestra jurisprudencia interpretativa se han establecido los elementos constitutivos de dicha causa de acción, reconociendo que el promovente deberá demostrar que el agente productor del daño: (1) tuvo la intención de producir la detención ilegal o existe una certeza sustancial de que el acto ejecutado tenía la voluntad de producir la misma; (2) el agente llevó a cabo un acto positivo o afirmativo con la intención de producir ilegalmente la detención involuntaria del perjudicado; (3) dicha detención se produjo ilegalmente; (4) que la misma fue involuntaria; (5) que el perjudicado estaba consciente de su detención; y (6) que existe una relación causal entre el acto afirmativo del demandado y la detención del demandante. *Álamo v. Supermercado Grande, Inc.*, 158 DPR 93, 106 (2002); *Parrilla v. Ranger American of P.R.*, 133 DPR 263, 272 (1993).

La procedencia de la causa de acción y el cumplimiento de estos requisitos dependerá, además, de **criterios de razonabilidad de acuerdo a las circunstancias particulares de cada caso**. Nuestro máximo foro ha expresado que:

> Toda vez que la misma se considera una trasgresión a la persona y va fundamentalmente dirigida a proteger a los individuos en el disfrute de su derecho de libertad, no se requiere que el perjudicado sea arrestado ni encarcelado; sólo se requerirá la mera interferencia del demandado con la libertad total de movimiento del perjudicado. *Álamo v. Supermercado Grande, Inc.*, *supra*.

Acorde con lo anterior, para prevalecer en una causa de acción por detención ilegal debe demostrarse que se interfirió con la libertad de movimiento de la persona, independientemente de donde se encuentre. *Castro v. Tiendas Pitusa, supra*, pág. 656. Para ello, no es necesario hacer uso de la fuerza, ni que el perjudicado ofrezca resistencia violenta. *Id.*; *Álamo v. Supermercado Grande, Inc.*, *supra*. Además, la duración de la detención sólo surtirá efectos en cuanto al alcance de los daños sufridos y no en cuanto a la configuración de la causa de acción, toda vez que la

mera detención ilegal, por más mínima que sea, da derecho a la reclamación. *Castro v. Tiendas Pitusa, supra.*

## D.

El Artículo 703 Código Civil establece que la posesión es la tenencia de una cosa o el disfrute de un derecho por una persona. 31 LPRA sec. 7821. La posesión se ejercer en los bienes por la misma persona que los tiene y los disfruta o, en la alternativa, por otra en su nombre. 31 LPRA sec. 7824. Cuando se trata de proteger la posesión, el poseedor puede ejercer actos o acogerse a los medios de legítima defensa de su posesión, además de las acciones penales. 31 LPRA sec. 7861. Por ello, todo poseedor tiene derecho a ser respetado en su posesión. 31 LPRA sec. 7862. De ser inquietado indebidamente en su posesión, debe ser amparado o restituido en dicha posesión por los medios que la ley procesal dispone. *Id.* Claro está, la posesión de la cosa mueble no se entiende perdida mientras el bien mueble se encuentre bajo el poder del poseedor, aun cuando éste ignore accidentalmente su paradero. 31 LPRA sec. 7892. La posesión se pierde, entre otras, por el abandono de la cosa. 31 LPRA sec. 7895.

## III.

La señora Figueroa Coss acude ante esta curia para solicitar la revocación de las *Sentencias Parciales* apeladas y la continuación de los procedimientos ante el TPI. En su único error, señaló que los dictámenes incidieron al basarse en el *Manual del Empleado*, aun cuando las causas de acción alegadas se asientan en el registro ilegal, la incautación de su arma de fuego y la restricción a la libertad. Cuestiona, a su vez, el fraccionamiento de la reclamación, en el que se relevó a partes indispensables.

Al argumentar, la apelante plantea que el TPI requería conferir valor probatorio previo a emitir las sentencias desestimatorias. Reitera las alegaciones de la *Demanda Enmendada* y expone que le alberga el derecho a una expectativa de intimidad, que no renunció a ese derecho, por lo que

el patrono debía notificar con antelación al ejercicio de intervención realizado. Sostiene que su libertad fue restringida cuando los apelados tomaron control de sus pertenencias. Aduce también que las partes relevadas son partes indispensables y solidarias de las causas de acción reclamadas.

En el caso de autos, mediante los referidos dictámenes, el TPI desestimó la *Demanda Enmendada* incoada contra varios apelados. En primer lugar, desestimó la causa de acción contra el Hospital y varios empleados por entender que las políticas del patrono fueron claras en cuanto a la prohibición de armas de fuego en el establecimiento y la ausencia de expectativa de privacidad en los casilleros ni en el contenido depositados en ellos. Inclusive, señaló que del propio *Manual del Empleado* del Hospital se contemplaba la autoridad para inspeccionar el contenido de los casilleros y de los objetos allí colocados. Además, el TPI encontró que ni el Hospital ni CSP y sus respectivos empleados privaron a la señora Figueroa Coss de su arma de fuego ya que, luego de ser escoltada fuera del Hospital, la señora Figueroa Andino la devolvió. De igual forma, no encontró que los hechos se sustentaran sobre los elementos jurídicos necesarios para configurar una causa de acción por detención ilegal.

El *Manual del Empleado* del Hospital establece, entre otras, normas sobre la seguridad en el empleo, la inspección de casilleros y la portación de armas. La norma sobre inspección de casilleros versa de la siguiente manera:

> **Inspección de Armarios, Escritorios y *Lockers***
>
> Los escritorios, *lockers* u otro equipo o propiedad que el Hospital provea a sus empleados para guardar sus pertenencias son propiedad del Hospital. **El Hospital tiene el derecho de inspeccionar o revisar cualquiera de los equipos o muebles de su propiedad cuando lo estime pertinente, necesario y conveniente**. Por tal razón, **no existe ni debe existir expectativa de privacidad con respecto al contenido de éstos**. (Énfasis nuestro).[19]

---

[19] Apéndice de CSP, pág. 100; entrada 38 de SUMAC, Anejo 1, *Manual del Empleado*, pág. 59, inciso 19.

De otro lado, el *Manual del Empleado* expresamente prohíbe la portación de armas en el Hospital. Así lo dispone la Regla de Conducta número 50:

> Portación de armas: Está **terminantemente prohibido portar armas de fuego dentro de las áreas del Hospital**, salvo que sea un requisito del puesto **o le haya sido autorizado (por escrito) por el hospital**, independientemente de que la persona posea portación legal de un arma aprobada por un tribunal competente. **También está prohibido usar o guardar armas de fuego u otros artefactos que constituyan o puedan constituir un arma, en terrenos o propiedades del hospital sin la debida autorización del Hospital. La violación a esta norma conllevará el despido inmediato.** (Énfasis nuestro).[20]

Incluso, en las *Normas Generales del Trabajo* se dispone en la reglamentación con meridiana claridad que como parte de la seguridad en el empleo "**[n]ingún empleado deberá introducir o portar armas de fuego**, explosivos y/o elementos químicos prohibidos dentro del establecimiento. Violar esta disposición será causa para el despido". (Énfasis nuestro).[21] Cabe señalar que, según reseñamos, la señora Figueroa Coss tenía conocimiento sobre el *Manual del Empleado* y su contenido. Así quedó evidenciado en el *Acuse de Recibo del Manual del Empleado*, el cual cuenta con la firma y aceptación de la apelante.[22]

De otro lado, recordemos que nuestra jurisprudencia reconoce que "**[e]l manual de una empresa que contiene las reglas y los reglamentos del trabajo** y que establece las normas, los beneficios y los privilegios que disfrutará el empleado **forma parte del contrato de trabajo**". (Énfasis nuestro). *Santiago v. Kodak Caribbean, Ltd.*, 129 DPR 763, 775-776 (1992). Al respecto, las cláusulas del manual deben interpretarse "... las unas por las otras, atribuyendo a las dudosas el sentido que resulte del conjunto de todas" ... [y], por ser [el manual] un contrato típico de adhesión, en la preparación del cual el empleado no participó, las cláusulas obscuras o ambiguas deben ser interpretadas liberalmente a

---

[20] Apéndice de CSP, pág. 139; entrada 38 de SUMAC, Anejo 1, *Manual del Empleado*, pág. 98, inciso 50.

[21] Apéndice de CSO, pág. 65; entrada 38 de SUMAC, Anejo 1, *Manual del Empleado*, pág. 24, inciso 8 (c).

[22] Apéndice del Hospital, pág. 39.

favor de éste, promoviendo así, hasta donde sea posible, la igualdad jurídica en materia de contratación". *Feliciano Martes v. Sheraton*, 182 DPR 368, 385 (2011), que cita a *Santiago v. Kodak Caribbean, Ltd., supra,* pág. 776.

Bajo este crisol, de las precitadas normas surgen dos asuntos importantes: la prohibición de poseer y portar armas de fuego en el Hospital y la ausencia de expectativa de privacidad en los casilleros. Ambas normas son palmariamente claras. Por igual, su justificación se asienta en el derecho del patrono a cuidar y velar por la seguridad y su propiedad, siempre y cuando no infrinja en los derechos constitucionales de sus empleados. En torno a esto, opinamos que la política del Hospital sobre inspección de casilleros, debidamente advertida, es una razonable y no infringió el derecho constitucional a la intimidad en el empleo de la señora Figueroa Coss, toda vez que ésta sabía que no le albergaba una expectativa razonable de intimidad en el casillero propiedad de su patrono. A esto sumamos la explícita y absoluta prohibición de portar y poseer armas de fuego en el Hospital. Una norma que la apelante ignoró por completo.[23]

La señora Figueroa Coss alegó también que se le privó de la posesión de su propiedad, en referencia al arma de fuego. De acuerdo con los hechos proporcionados por la apelante, ésta dejó su arma de fuego dentro de su cartera, que a su vez se encontraba dentro del casillero de la señora Salas, sin un candado. Durante la inspección de los casilleros, personal del Hospital y CSP halló el arma de fuego, siendo ocupada por la señora Figueroa Andino, en presencia de la apelante. Entonces, tras devolver el uniforme del Hospital, la señora Figueroa Andino escoltó a la apelante hasta la salida del establecimiento; y allí, le devolvió el arma de fuego.

---

[23] Con relación a la alegada situación de violencia doméstica aludida por la apelante, la Ley 217 de 29 de septiembre de 2006, *Ley del Protocolo para Manejar Situaciones de Violencia Doméstica en Lugares de Trabajo o Empleo*, 8 LPRA sec. 601 *et seq.*, requiere que los patronos públicos y privados que establezcan un protocolo para el manejo de situaciones de violencia doméstica. El estatuto propende al repudio enérgico de este problema social y compele al adiestramiento de los empleados, con el fin de proveer un lugar seguro en el trabajo.

De acuerdo con los hechos ante nuestra consideración, la señora Figueroa Coss, quien reconoció que dejó el arma de fuego en un casillero del Hospital, asignado a un tercero y sin candado, conocía el paradero de su arma de fuego. La breve tenencia del arma de fuego a manos de la señora Figueroa Andino, no sólo fue en presencia de la apelante, sino como parte de una inspección rutinaria, claramente prevenida en la reglamentación del patrono. Posteriormente, se le entregó el arma de fuego en el exterior del establecimiento y no sufrió deterioro alguno. Por ello, somos del criterio que los hechos antes relatados no demuestran una privación de la posesión de la propiedad de la señora Figueroa Coss.

Finalmente, la señora Figueroa Coss alegó que se le privó de su libertad al ser detenida ilegalmente por el personal del Hospital y CSP. En específico, planteó que hubo detención cuando se le requirió que se personara al área de los casilleros, donde los apelados retuvieron el arma de fuego de su propiedad.

Repasemos los hechos en los que se basan estas alegaciones en la *Demanda Enmendada* de epígrafe. El 20 de febrero de 2024, durante su turno de trabajo, se convocó a la apelante a trasladarse al área de los casilleros. Allí, personal del Hospital y CSP, en presencia de la apelante, encontraron un arma de fuego en la cartera de la señora Figueroa Coss, como parte de un procedimiento de inspección, para contrarrestar el hurto de narcóticos. Luego de encontrar el arma de fuego en la cartera de la apelante, se le requirió a la señora Figueroa Coss que se cambiara de ropa, devolviera su uniforme de trabajo y abandonara las instalaciones del Hospital. Acto seguido, la señora Figueroa Andino escoltó a la apelante a la entrada del Hospital, donde le devolvió el arma de fuego.

Como puede verse, de los hechos ni del expediente ante nuestra consideración surge que oficiales del Hospital ni la señora Figueroa Andino detuvieron ilegalmente a la señora Figueroa Coss. No están presentes ninguno de los elementos constitutivos que un promovente debe demostrar en una causa de acción sobre detención ilegal. Ni el Hospital,

ni CSP ni sus empleados tuvieron la intención de detener a la apelante. De hecho, ni de la inspección del casillero y ni el hallazgo del arma de fuego, se llevó a cabo un acto afirmativo o intencional de producir ilegalmente una detención involuntaria. Como apostillamos antes, tanto el registro del casillero y la prohibición absoluta de portar armas de fuego están avaladas en la reglamentación patronal. A esos efectos, al tenor de las circunstancias particulares de este caso, el tiempo en que la apelante se encontraba en el área de los casilleros, por instrucción del patrono, satisfizo los criterios de razonabilidad. En fin, no encontramos que se cumplan con los elementos de una detención ilegal.

Por todo esto, consideramos que el error señalado por la señora Figueroa Coss no se cometió.

## IV.

Por los fundamentos expuestos, confirmamos las *Sentencias Parciales* apeladas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones